118 P.3d 398 (2005)
Stephany F. LOPEZ, Appellant,
v.
Ramon REYNOSO and Jane Doe Reynoso, d/b/a Triple R Auto Sales, a sole proprietorship; and Colonial American Casualty and Surety Company, a foreign corporation, Respondents.
No. 22631-0-III.
Court of Appeals of Washington, Division 3, Panel Three.
August 23, 2005.
*400 David B. Trujillo, Law Offices of David B. Trujillo, Yakima, WA, for Appellant.
Alexander A. Friedrich, Yusen & Friedrich, Seattle, WA, Howard N. Schwartz, Attorney at Law, Yakima, WA, for Respondents.
SCHULTHEIS, J.
¶ 1 Parol evidence is generally admissible to construe a written contract and to determine the intent of the parties. Berg v. Hudesman, 115 Wash.2d 657, 669, 801 P.2d 222 (1990). However, parol evidence cannot add to, modify, or contradict the terms of a fully integrated contract. Id. at 670, 801 P.2d 222.
¶ 2 Stephany Lopez bought a used car from Ramon Reynoso (doing business as Triple R Auto Sales) pursuant to an installment sales contract. When Ms. Lopez did not make all the payments listed in her amortization schedule, Mr. Reynoso repossessed the car. Ms. Lopez sued for replevin and additional recovery. She moved to exclude parol evidence offered by Mr. Reynoso to show that a $2,000 payment by Ms. Lopez on the day of the sale or one day later was deducted from the sale price listed on the contract. She contends the $2,000 was actually an additional payment that reduced her obligation under the contract. The trial court allowed the parol evidence and entered judgment for Mr. Reynoso.
¶ 3 On appeal, Ms. Lopez contends the trial court erred in admitting parol evidence that contradicted terms in the integrated contract. She also argues the trial court applied the incorrect standard of evidence. We conclude that the trial court was justified in examining extrinsic evidence to determine whether the contract was the final expression of the parties' agreement. Because we also conclude that the trial court's decision is based on the proper evidentiary standard and is supported by the evidence, we affirm.

FACTS
¶ 4 Mr. Reynoso began selling used cars as Triple R Auto Sales in May 2000. His family had known Ms. Lopez for several years. In late May 2000, Ms. Lopez visited Triple R and asked the price of a 1994 Ford Explorer. Mr. Reynoso was out of town, but an employee called him and learned that the asking price was $8,500. Ms. Lopez tried to negotiate a lower price with the employee, but he asked her to return when Mr. Reynoso could talk with her.
¶ 5 Two days later, on June 2, Ms. Lopez purchased the Explorer from Mr. Reynoso. According to her, the parties agreed to a sale price of $6,500 with $500 down and interest at three percent. She claims she gave Mr. Reynoso $500 down in cash but never received a receipt for the payment. Mr. Reynoso *401 claims he agreed to lower the sale price to $8,000 if Ms. Lopez agreed to pay $2,000 down. He asserts Ms. Lopez's boyfriend, Fernando Ortega, gave him $1,800 on June 2, when the agreement was executed, and Ms. Lopez brought in the additional $200 the next day. The receipt for the $1,800 payment is undated and numbered 3100; the receipt for the $200 payment is dated June 3, 2000 and numbered 3112.
¶ 6 Mr. Reynoso insists Ms. Lopez did not want the sales contract to show that the couple had paid $2,000 down. He was not sure why Ms. Lopez wanted the contract to state the sale price was $6,500 with a down payment of $500, but because the payments would be the same, he agreed to write it the way he says Ms. Lopez wanted it. At trial, Mr. Reynoso's daughter, a childhood friend of Ms. Lopez, testified that she witnessed the execution of the contract and that Ms. Lopez had the idea to write the contract with a price reduced by $2,000 because she did not want Mr. Ortega's name to be on the title to the car.
¶ 7 The terms of the contract, as drafted by the Triple R accountant on June 2, state that the price of the vehicle is $6,500, the tax and license fee are over $500, and the down payment is $500, for a total price of $6,533.[1] Language at the bottom of the purchase order form states: "This order cancels and supercedes any prior agreement and as of the date herein comprises the complete and exclusive statement of the terms of this agreement." Clerk's Papers (CP) at 58. After Ms. Lopez signed the agreement, the accountant compiled an amortization schedule for $250 monthly payments and gave a copy to Ms. Lopez. This schedule indicates that Ms. Lopez's last payment was due in September 2002.
¶ 8 According to Mr. Reynoso, Ms. Lopez was often late with payments and did not make her December 2001 payment. When she appeared at his office in January 2002 with a $250 payment, he refused it, claiming she owed him for two months. Ms. Lopez contends she asserted at that time that her $2,000 payment was made after the sale agreement and lowered her obligation by another $2,000, which would be paid in full by the December 2001 payment. Mr. Reynoso says Ms. Lopez did not claim she had paid the full amount with the December payment. Ms. Lopez again offered to pay $250 in February 2002 and Mr. Reynoso again rejected the payment. He repossessed the Explorer in March 2002. Later that month, Ms. Lopez hired Molly Earhart to prepare an amortization schedule based on a purchase price of $7,033 (the sale price plus tax and license), a down payment of $500, and a post-sale payment of $2,000. According to this new amortization schedule, Ms. Lopez's final payment should have been only $145 in January 2002.
¶ 9 Ms. Lopez filed a complaint against Mr. Reynoso, his wife, Triple R, and the bonding company on April 11, 2002. She requested return of the Explorer, treble damages, and attorney fees for breach of the contract and violations of chapter 46.70 RCW (proscribing unfair motor vehicle business practices) and chapter 19.86 RCW (Washington's Consumer Protection Act). In September 2002 she moved for an order in limine to exclude parol evidence and for judgment on the pleadings. The motions were denied after a hearing. After a bench trial in September 2003, the court entered judgment for the defendants. Ms. Lopez's motion for reconsideration was denied and the trial court's findings, conclusions, and judgment were entered on November 14, 2003. The notice of appeal was timely filed.

PAROL EVIDENCE
¶ 10 Ms. Lopez first challenges the trial court's consideration of evidence extrinsic to the written contract. She contends the trial court used this evidence to contradict or vary the express, unambiguous terms of the integrated contract. We review the trial court's findings of fact regarding the admissibility of parol evidence for substantial evidence. Weyerhaeuser v. Tacoma-Pierce County Health Dep't, 123 Wash.App. 59, 65, *402 96 P.3d 460 (2004); Ban-Co Inv. Co. v. Loveless, 22 Wash.App. 122, 130, 587 P.2d 567 (1978). The evidence is viewed in the light most favorable to the prevailing party, and we defer to the trier of fact on issues of witness credibility. Weyerhaeuser, 123 Wash.App. at 65, 96 P.3d 460.
¶ 11 In Washington, "[t]he touchstone of contract interpretation is the parties' intent." Tanner Elec. Coop. v. Puget Sound Power & Light, 128 Wash.2d 656, 674, 911 P.2d 1301 (1996). This intent may be discerned from the language of the agreement as well as from viewing the objective of the contract, the circumstances around its making, the subsequent conduct of the parties, and the reasonableness of their respective interpretations. Scott Galvanizing, Inc. v. N.W. EnviroServices, Inc., 120 Wash.2d 573, 580-81, 844 P.2d 428 (1993). Under the parol evidence rule, "prior or contemporaneous negotiations and agreements are said to merge into the final, written contract," Emrich v. Connell, 105 Wash.2d 551, 556, 716 P.2d 863 (1986), and evidence is not admissible to add to, modify, or contradict the terms of the integrated agreement. DePhillips v. Zolt Constr. Co., 136 Wash.2d 26, 32, 959 P.2d 1104 (1998); Berg, 115 Wash.2d at 670, 801 P.2d 222. But the parol evidence rule is only applied to writings intended as the final expression of the terms of the agreement. Emrich, 105 Wash.2d at 556, 716 P.2d 863; RCW 62A.2-202.[2] Extrinsic evidence may be used to ascertain the intent of the parties, to properly construe the writing, and to determine whether the writing is actually intended to be the final expression of the agreement. DePhillips, 136 Wash.2d at 32, 959 P.2d 1104; Morgan v. Stokely-Van Camp, Inc., 34 Wash.App. 801, 806, 663 P.2d 1384 (1983).
¶ 12 Generally people have the right to make their agreements entirely oral, entirely in writing, or partly oral and partly in writing. Diel v. Beekman, 1 Wash.App. 874, 879-80, 465 P.2d 212 (1970) (quoting Barber v. Rochester, 52 Wash.2d 691, 698, 328 P.2d 711 (1958)). With a written contract, "it is the court's duty to ascertain from all relevant, extrinsic evidence, either oral or written, whether the entire agreement has been incorporated in the writing or not. That is a question of fact." Barber, 52 Wash.2d at 698, 328 P.2d 711. If the writing is a complete integration, any terms and agreements that are not contained in it are disregarded. Morgan, 34 Wash.App. at 807, 663 P.2d 1384 (quoting 5 R. MEISENHOLDER, WASHINGTON PRACTICE § 121, at 125 (1965)). If it is not intended to be the complete expression of the parties' intentin other words, if it is only partially integratedthe writing may be supplemented or replaced by consistent terms or agreements shown by a preponderance of the evidence. Id.; see also Denny's Rests., Inc. v. Sec. Union Title Ins. Co., 71 Wash.App. 194, 202, 859 P.2d 619 (1993).
¶ 13 The Lopez-Reynoso written agreement executed on June 2, 2000 stated that the cash price of the vehicle was $6,500, the down payment was $500, and Ms. Lopez would make 26 payments of $250 and a final payment of $264.87. The sales contract included an integration clause that stated that the writing comprised the complete and exclusive statement of the terms. When Mr. Reynoso responded that the writing was an incomplete expression of the entire negotiations and agreements of the parties, the trial court was obligated to consider any extrinsic evidence to determine whether the agreement was fully integrated, and if not, what other terms consistent with the written agreement were operative. Emrich, 105 Wash.2d at 556, 716 P.2d 863.
*403 ¶ 14 After considering the parties' inconsistent recitations of the events leading up to the sale, the testimony of witnesses, and evidence of customary retail business practices, the trial court found Mr. Reynoso's explanation more credible and reasonable and implicitly concluded that the written agreement was only partially integrated. These findings are supported by substantial evidence. For instance, Mr. Reynoso testified that he invested almost $6,000 in the Explorer, suggesting that a sale price of $6,500 was not believable. The trial court also found it unrealistic that a used car dealer financing a sale himself would accept a down payment of less than 10 percent. We defer to the trial court's firsthand determination of the witnesses' credibility. Weyerhaeuser, 123 Wash.App. at 65, 96 P.3d 460.
¶ 15 Assuming that the written sale agreement was only partially integrated and that the parties had orally agreed to additional terms, we address the remaining question: whether the purported oral agreement contradicts any valid terms of the written contract. Emrich, 105 Wash.2d at 557, 716 P.2d 863. Evidence that the parties agreed to reduce the sale price by the $2,000 down payment is not inconsistent with the actual terms of repayment included in the contract and the amortization schedule. The reduced price of $6,000 does contradict the written terms of a $6,500 sale price and a $500 down payment, but the result is the same: a contract price of $6,000 for a vehicle originally priced at $8,500. Ultimately, the extrinsic evidence of prior negotiations reveals terms that do not contradict the written terms of the vehicle's price and the number of payments Ms. Lopez owed.
¶ 16 Ms. Lopez notes that the integration clause at the bottom of Mr. Reynoso's "vehicle purchase order" explicitly provides that the written agreement is fully integrated. CP at 58. The relevant statements on this standard form are as follows:
Purchaser agrees that (1) this order includes all the terms and conditions on both the face and the reverse side of, together with any attachments herein referred to. (2) This order cancels and supercedes any prior agreement and as of the date herein comprises the complete and exclusive statement of the terms of this agreement relating to the subject matters covered hereby.
CP at 58. Although an integration clause is a strong indication that the parties intended complete integration of a written agreement, M.A. Mortenson Co. v. Timberline Software Corp., 140 Wash.2d 568, 579-80, 998 P.2d 305 (2000), a boilerplate clause will not be given effect if it appears that the provision is factually false. Black v. Evergreen Land Developers, Inc., 75 Wash.2d 241, 250-51, 450 P.2d 470 (1969); Lyall v. DeYoung, 42 Wash.App. 252, 257-58, 711 P.2d 356 (1985). Parol evidence is admissible to show whether language denying the existence of any other agreement is controlling. Black, 75 Wash.2d at 250-51, 450 P.2d 470. When material extrinsic evidence shows that outside agreements were relied upon, those parol agreements should be given effect rather than allowing boilerplate "to vitiate the manifest understanding of the parties." Lyall, 42 Wash.App. at 258, 711 P.2d 356 (explaining the decision in Black).
¶ 17 The integration language here is in a boilerplate clause attached to the vehicle purchase order form. The trial court's decision to ignore the integration clause is supported by substantial evidence that the parties based the sales contract on an outside agreement to lower the sale price by the $2,000 down payment.

STANDARD OF PROOF
¶ 18 Ms. Lopez next contends the trial court erred in denying her CR 12(c) motion for a judgment on the pleadings. She argues that Mr. Reynoso improperly drafted the contract and failed to prove affirmative defenses of fraud, accident, or mistake with clear, cogent, and convincing evidence.
¶ 19 Although Ms. Lopez moved under CR 12(c) for a judgment on the pleadings, extrinsic evidence was offered to prove the parol agreements, converting her motion to one for summary judgment. CR 12(c). The trial court denied her motion, finding sufficient evidence to raise questions of fact regarding the interpretation of the contract, *404 and the matter went to trial. After a trial on the merits, we will not review a trial court's denial of a motion for summary judgment if the denial was based on the presence of material disputed facts. Herring v. Dep't of Soc. & Health Servs., 81 Wash.App. 1, 14, 914 P.2d 67 (1996); Johnson v. Rothstein, 52 Wash.App. 303, 304, 759 P.2d 471 (1988). Accordingly, review here is based on the record made at trial, not the record made at the time summary judgment was denied. Johnson, 52 Wash.App. at 306, 759 P.2d 471.
¶ 20 Ms. Lopez additionally asserts that the trial court should have required clear, cogent, and convincing evidence that the parol agreement was intended to supplement the written contract. She appears to argue that Mr. Reynoso pleaded fraud, accident, or mistake as affirmative defenses to application of the parol evidence rule. See In re Marriage of Schweitzer, 132 Wash.2d 318, 328, 937 P.2d 1062 (1997) (the party asserting mutual mistake to avoid the parol evidence rule must prove by clear, cogent, and convincing evidence that the parties were mistaken). But Mr. Reynoso did not plead affirmative defenses of fraud, accident, or mistake. He asserted extrinsic evidence showed that the written contract was not the complete expression of the parties' agreement. As noted above, a contract that is only partially integratedas the trial court implicitly concluded heremay be supplemented by terms or agreements shown by a preponderance of the evidence. Denny's, 71 Wash.App. at 202, 859 P.2d 619; Morgan, 34 Wash.App. at 807, 663 P.2d 1384. The trial court did not err in basing its findings of fact on a preponderance of the evidence.
¶ 21 In summary, the trial court's examination of extrinsic evidence to determine whether the parties intended the written contract to be the final expression of their terms was proper. Its conclusion that Mr. Reynoso's explanation of the negotiations was more credible is supported by a preponderance of the evidence and by the trial court's inherent authority to determine the credibility of the witnesses. Sufficient evidence supports the trial court's findings of fact, which in turn support its conclusion that the $2,000 down payment reduced the sale price to $6,000, and that Mr. Reynoso lawfully repossessed the Explorer after Ms. Lopez defaulted on the monthly payments due in January, February, and March 2002. Because Mr. Reynoso's repossession was lawful, he did not violate chapter 46.70 RCW or chapter 19.86 RCW. Dismissal of Ms. Lopez's complaint and judgment for Mr. Reynoso were therefore justified. As Ms. Lopez does not prevail on appeal, she is not entitled to attorney fees under the sales contract, RCW 46.70.190 (actual damages caused by vehicle dealer unfair practices), or RCW 19.86.090 (the Consumer Protection Act).
¶ 22 Affirmed.
I CONCUR: BROWN, J.
SWEENEY, A.C.J. (dissenting) I respectfully dissent.
¶ 23 Parol evidence tending to contradict the terms of a written contract should not, in the face of oral testimony corresponding with the unambiguous language in the contract, be allowed to nullify the language of the instrument. Randall v. Tradewell Stores, Inc., 21 Wash.2d 742, 748, 153 P.2d 286 (1944). If the parol evidence rule does not apply to these facts, it is meaningless.
¶ 24 The parties do not dispute the facts. Stephany Lopez bought a car from Ramon Reynoso pursuant to an unambiguous, integrated, written contract. The contract states the price as $6,500. Ms. Lopez began missing payments, and Mr. Reynoso repossessed the car. In response to Ms. Lopez's action for replevin, Mr. Reynoso repudiated the plain terms of the written contract and successfully enforced an alleged oral agreement that the price was really $2,000 higher than the written contract price.
¶ 25 The trial court erred in admitting parol evidence directly contradicting the terms of the written contract.
¶ 26 The contract Mr. Reynoso now repudiates was his contract. He drafted it. He was responsible for it. Mr. Reynoso included in his contract an ironclad integration clause:
Purchaser agrees that (1) this order includes all the terms and conditions on both the face and the reverse side of, together *405 with any attachments herein referred to. (2) This order cancels and supercedes any prior agreement and as of the date herein comprises the complete and exclusive statement of the terms of this agreement relating to the subject matters covered hereby.
Clerk's Papers at 58. This language may be "boilerplate." But, again, it is Mr. Reynoso's boilerplate. Ms. Lopez did not change the language or add anything to this contract as a result of her discussions with the seller. And while the absence of such a clause suggests that the agreement or purchase order was not the complete agreement of the parties, the inclusion of an integration clause suggests just the opposite. M.A. Mortenson Co., Inc. v. Timberline Software Corp., 140 Wash.2d 568, 579-80, 998 P.2d 305 (2000).
¶ 27 Moreover, even under the Berg v. Hudesman rule, which admits parol evidence to determine the intent of the parties, parol evidence is not admissible to contradict or vary the terms of a fully integrated contract. Berg v. Hudesman, 115 Wash.2d 657, 670, 801 P.2d 222 (1990). This contract was fully integrated. And according to its clear language the parties intended it to be. Once it is established that an agreement is completely integrated, parol evidence offered to contradict or vary its terms should be rejected. Ban-Co Inv. Co. v. Loveless, 22 Wash.App. 122, 130, 587 P.2d 567 (1978). A central element of any contract is the price. Here, the price is stated as $6,500. The price Mr. Reynoso claims, $8,000, certainly contradicts or varies the terms of this written agreement.
¶ 28 I would, then, enforce the contract as written. If parties to an integrated written contract have a secret handshake agreement to contrary terms, it is the written agreement the courts will enforce.
NOTES
[1] If, as Mr. Reynoso contends, the actual price of the Explorer was $8,000, reduced to $6,000 by the $2,000 down payment, the tax and fee would have been the same and the total obligation would still have been $6,533.
[2] Washington's codification of the use of parol or extrinsic evidence under the Uniform Commercial Code mirrors the common law:

Terms with respect to which the confirmatory memoranda of the parties agree or which are otherwise set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement but may be explained or supplemented
(a) by course of dealing or usage of trade (RCW 62A.1-205) or by course of performance (RCW 62A.2-208); and
(b) by evidence of consistent additional terms unless the court finds the writing to have been intended also as a complete and exclusive statement of the terms of the agreement.
RCW 62A.2-202.