# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| BASIL D. BENA, | No. 47576-6-II |
| Respondent/Cross-Appellant, | |
| v. | |
| NATHAN B. SCHLEICHER and MARY L. SCHLEICHER, husband and wife, | UNPUBLISHED OPINION |
| Appellants/Cross Respondents. | |

BJORGEN, C.J. — Nathan and Mary Schleicher[1] appeal the trial court judgment ordering them to re-sign a $100,000 promissory note and mortgage in favor of Basil D. Bena that Bena had previously released.  They argue that:  (1) parol evidence of the obligation to pay Bena the additional $100,000 under the promissory note contradicts the terms of the real estate purchase and sale agreement (REPSA), (2) an interpretation of the February 2, 2012 release by Bena as ineffective between the parties contradicts the terms of the release, (3) the provisions of the promissory note and mortgage contradict the integrated portions of the REPSA and other

---

[1] The record refers to Nathan Schleicher by his middle name, Bruce.  We refer to Nathan and Mary Schleicher by their first names for clarity.  We intend no disrespect.

documents and are therefore extinguished under the doctrine of merger, (4) the statute of frauds bars the promise to reinstate the note and mortgage, (5) the promissory note and mortgage are unenforceable on the grounds of illegality, and (6) several of the trial court's findings of fact are not supported by substantial evidence. Bena also cross appeals the trial court's decision to deny attorney fees under the fee provisions of the promissory note and mortgage. He argues that (7) the present litigation is included in the scope of the attorney fee provisions contained in the note and mortgage.

We hold that (1) parol evidence demonstrates that the REPSA is not a fully integrated document, and the additional terms of the promissory note and mortgage do not conflict with the partially integrated terms of the REPSA, (2) parol evidence demonstrates that the release is not a fully integrated document, and the use of parol evidence to determine that the release is ineffective between the parties does not contradict the partially integrated release, (3) the terms of the promissory note and mortgage are not extinguished under the doctrine of merger, (4) to the extent that the release is not effective between Bena and the Schleichers, the original promissory note and mortgage satisfy the statute of frauds, (5) the promissory note and mortgage are enforceable under the doctrine of severability, and the Schleichers may not raise illegality as a defense given Bena's performance of his obligations under the contract, (6) the trial court's findings of fact are supported by substantial evidence, and (7) the terms of the attorney fee provisions place this litigation outside their scope. Accordingly, we affirm the judgment of the trial court.

FACTS

In 2011, Bena and Jane Brae-Bedell were attempting to sell their home located on East Half Mile Road in Clallam County. Brae-Bedell and Bena were friends with the Schleichers. After the Schleichers moved to Gig Harbor, they remained friendly with Bena and Brae-Bedell, and were permitted to stay at the East Half Mile Road property while Bena and Brae-Bedell were vacationing.

Prior to 2011, Bena had been attempting to sell the East Half Mile Road property for a number of years. In 2006-2007, the property was listed at $550,000. From 2009-2010, the property was listed first at $515,000 and again at $490,000. An offer was made in August 2010 for $475,000, but was declined because it had too many contingencies.

The Schleichers entered into negotiations with Bena and Brae-Bedell to purchase the East Half Mile Road property, although each party disputed the specifics of the negotiations. Brae-Bedell claimed that Mary expressed an interest in purchasing the house. On the other hand, Mary stated that Brae-Bedell was concerned about her own health and had put pressure on the Schleichers to purchase the property.

Bena stated that in April 2011, the parties met to discuss the details of the sale and agreed on a price of $450,000. However, because the Schleichers were only pre-approved for a $350,000 loan, Bena agreed to take an additional promissory note and mortgage for $100,000.

Nathan testified that the parties had never discussed a $450,000 price for the property. Nathan stated that he would not have considered the property at the price of $450,000 because the property was too far from the airport where he worked as a pilot and because the East Half

Mile Road property had been appraised at $315,000. Rather, Nathan testified that he only agreed to the $350,000 because Brae-Bedell had potential medical expenses, and the Schleichers wanted to help their friends. The parties signed a REPSA on May 1, 2011, which listed the purchase price of the property as $350,000.

On August 30, 2011 the parties signed a promissory note and mortgage, in which the Schleichers promised to pay Bena $100,000 to supplement the $350,000 loan that the Schleichers were seeking from their lender. Nathan denied any knowledge of the $100,000 promissory note and mortgage prior to this meeting and stated that while he was "flabbergasted," he signed the note at the urging of his wife to "just sign" the documents. Clerk's Papers (CP) at 25. The promissory note and mortgage would not become due for five years from the date of signing and bore zero interest, although in the event of default, the amount would accrue five percent interest per year. The promissory note and mortgage were then placed in a safety deposit box and instructions were left in Bena's and Brae-Bedell's wills that in the event of their death, the Schleichers would receive the note as a gift, eliminating the Schleichers' obligation to pay $100,000. The promissory note was secured by a mortgage on the East Half Mile Road property, the property Bena intended to sell to the Schleichers.

On January 4, 2012 the Schleichers signed a debt acknowledgment form at the behest of their lender that stated they did not have any outstanding debt obligations other than those included in their loan application form. The Schleichers did not disclose the existence of the promissory note on their loan application. The Schleichers consulted an attorney and told Bena that the promissory note needed to "go away" in order for the Schleichers to obtain financing without committing mortgage fraud. CP at 26. Although the Schleichers attempted to back out

4

of the real estate sale entirely, Bena was adamant that the parties conclude the deal and stated his intention to enforce the contracts already signed between the parties.

Nathan told Bena that he could not get a mortgage with the $100,000 promissory note and mortgage outstanding, and that if he failed to disclose the note to his lender, he could potentially commit mortgage fraud. Bena testified that Nathan assured him that he would re-sign the promissory note after he obtained financing. On that basis, Bena executed a release of the $100,000 promissory note and mortgage, which stated in part, "the debt secured by said mortgage[] has been fully paid, satisfied, released, and discharged." Ex. 6. Neither party disputed the fact that the debt represented by the promissory note was not actually paid. Bena also sent a letter to the Schleichers' lender, which stated in part, "[East Half Mile Road] is not mortgaged or encumbered, nor has it ever been while in my possession." Ex. 8. Subsequently, the Schleichers secured financing and closed on the sale of the East Half Mile Road property. When Bena contacted Nathan about re-signing the promissory note, Nathan responded that the lack of a writing made the promissory note unenforceable and refused to re-sign. By this point, the friendship between the parties had entirely collapsed.

Bena sued the Schleichers, asking the trial court to order reinstatement of the promissory note and to grant other relief. Although the trial court noted that all of the parties appeared credible, it found the Schleichers' testimony less credible than Bena's and Brae-Bedell's testimony. The court found that the $100,000 promissory note and mortgage did not represent a charitable impulse, but rather was part of "a business transaction for the purchase of the property." CP at 27. The trial court further determined that the parties did not intend to change

5

their respective positions and obligations as a result of the release executed by Bena for the promissory note and mortgage. The court noted that there was "no evidence presented that the amount represented by the note was, in fact, paid." CP at 28. Rather, the trial court concluded that the release was intended to be effective solely between the Schleichers and their lender so that the Schleichers could get financing. The court reasoned that because the parties did not intend to change their respective positions, "the note and the mortgage executed by the Defendants on August 30, 2011, remain valid." CP at 29.

Among its findings of fact and conclusions of law, the trial court entered the following:

[Finding of Fact] 24. The Court is not persuaded that [Nathan] was cowed by Mary into signing a $100,000 note, for charitable reasons, with a five year maturity (with interest if not timely paid), and secured on real property that he and Mary were purchasing.

. . . .

[Conclusion of Law] 1. Having weighed the evidence and the credibility of the witnesses, the Court concludes that the promissory note and mortgage did not relate to charitable impulses by the [Schleichers] but, rather, related to a business transaction for the purchase of the property.

[Conclusion of Law] 3. . . . .

[a.] Rather, the parties intended that the note and mortgage not stand in the way of [the Schleichers'] ability to obtain a loan to purchase the property. That financing would occur only if the Defendants' lender had a first position security interest in the property. That financing would occur only if the [Schleichers'] lender had a first position security interest in the property.
. . . .
The release executed by [Bena], vis-à-vis Hunter Financial, the [Schleichers'] lender, is valid since the lender presumably relied upon it to ensure that its loan to [the Schleichers] was secured by a first position lien on the subject property.

. . . .

6

> [c]    . . . The promissory note and mortgage, however, were released by [Bena] at [Nathan's] urging prior to closing so that [the Schleichers'] lender could secure a first position lien on the property; but as between the parties, they did not intend that the terms of the note had been satisfied.  The parties simply intended that [Bena's] mortgage would not be in a position senior to that of the other secured lender, Hunter Financial.

CP at 27-30.

The trial court found in favor of Bena and ordered the Schleichers to reinstate the $100,000 promissory note and mortgage.  However, the court did not award Bena attorney fees under the fee provisions contained in the promissory note and mortgage.  The court reasoned that because the attorney fees' provision limited fees to collection actions and Bena sued the Schleichers to reinstate the promissory note, the litigation was not for the purpose of "obtain[ing] payment," and therefore not covered by the fee provisions.  CP at 106.  The Schleichers appeal the judgment against them, and Bena cross-appeals the denial of attorney fees under the promissory note and mortgage fee provisions.

ANALYSIS

I. INTEGRATION

A promissory note is a contract to pay money.  *Dep't of Revenue v. Sec. Pac. Bank*, 109 Wn. App. 795, 808 n.11, 38 P.3d 354 (2002).  Where contract interpretation does not require consideration of extrinsic evidence, it presents only an issue of law.  *Viking Bank v. Firgrove Commons 3, LLC*, 183 Wn. App. 706, 711, 334 P.3d 116 (2014).  However, where contract interpretation requires inferences from extrinsic evidence, it presents questions of fact.  *Viking Bank*, 183 Wn. App. at 711.

7

In interpreting contracts, our primary objective is to ascertain the parties' mutual intent at the time they executed the contract. *Id.* at 712. We focus on the objective manifestations of intent in the contract itself, rather than the subjective intentions of the parties. *Hearst Commc'ns, Inc. v. Seattle Times Co.*, 154 Wn.2d 493, 503, 115 P.3d 262 (2005). We also impute an objective intent corresponding to the reasonable meaning of the words used in the contract, as defined by their ordinary, usual, and popular meaning "unless the entirety of the agreement clearly demonstrates a contrary intent." *Id*. at 504. Furthermore, we consider extrinsic evidence of the context in which the contract was drafted "'to determine the meaning of specific words and terms used,'" though "not to 'show an intention independent of the instrument' or to 'vary, contradict or modify the written word.'" *Viking Bank*, 183 Wn. App. at 713 (quoting *Hearst*, 154 Wn.2d at 503) (emphasis omitted).

Under the parol evidence rule, parol or extrinsic evidence is generally not admissible to add to, subtract from, vary, or contradict written instruments which are contractual in nature and which are valid, complete, unambiguous, and not affected by accident, fraud, or mistake. *Emrich v. Connell*, 105 Wn.2d 551, 555-56, 716 P.2d 863 (1986). As a result of the parol evidence rule, prior or contemporaneous negotiations and agreements are said to merge into the final, written contract, and any evidence of these, even if admitted without objection, is rendered incompetent and immaterial. *Id*. at 556. The parol evidence rule is a rule of substantive law, not a rule of evidence. *Id*.

However, the parol evidence rule applies only to a writing intended by the parties as an integration of their agreement, that is, a writing intended as a final and complete expression of the terms of the agreement. *Id*. The trial court must determine whether the parties to a contract intended the written instrument to be an integration of their agreement. *Id*. This determination is

8

a question of fact that requires the trial court to "hear all . . . extrinsic evidence, oral or written." *Id*. In other words, a court may determine whether a contract is integrated using parol evidence. *Berg v. Hudesman*, 115 Wn.2d 657, 670, 801 P.2d 222 (1990). If the trial court determines that the document is integrated, the final and complete expression of the parties' agreement, then the court disregards extrinsic evidence. *Emrich*, 105 Wn.2d at 556. On the other hand:

> If . . . the court finds that the parties intended the writing to be a final expression of the terms it contains but not a complete expression of all terms agreed upon—*i.e., partially integrated*—then the terms not included in the writing may be proved by extrinsic evidence *only insofar as they are not inconsistent with the written terms*.

*Id*. Stated another way, if a writing is only partially integrated, "the writing may be supplemented or replaced by consistent terms or agreements shown by a preponderance of the evidence." *Lopez v. Reynoso*, 129 Wn. App. 165, 171, 118 P.3d 398 (2005).

In this case, the trial court found that "the promissory note and mortgage were part of the purchase [of the East Half Mile Road property,]" as intended by both parties. CP 31. Although the REPSA contained an integration clause, which is generally a strong indication that the parties intended a complete integration of a written agreement, a boilerplate clause will not be given effect if it appears the provision is factually false. *Lopez*, 129 Wn. App. at 173. Therefore, to the extent that the trial court found that the entire agreement between Bena and the Schleichers consisted of both the REPSA and the promissory note, the trial court found the REPSA to be a partially integrated document.

The Schleichers argue that even if the REPSA was a partially integrated document, the trial court improperly used parol evidence to determine that the total cost of the transaction was $450,000 because it contradicted the purchase price of $350,000 contained in the REPSA. We disagree.

In *Lopez*, Division Three of our court considered whether extrinsic evidence of prior negotiations and a down payment contradicted the written terms of a partially integrated sales agreement. *Id.* at 172. In *Lopez*, a customer negotiated a transaction with a used car salesperson, agreeing to purchase a car priced at $8,500 for $8,000 with a down payment of $2,000, and the remaining money to be paid over a period of time. *Id*. at 168-69. However, despite the fact that the $2,000 down payment was made, the parties prepared a written sales agreement with an integration clause that listed the sales price as $6,500 with a down payment of $500. *Id*. After the customer fell behind on payments, the customer asserted that the $2,000 payment already made was towards the $6,500 purchase price, and that extrinsic evidence to the contrary should be discarded under the parol evidence rule. *Id*. at 169. The court disagreed, finding that the sales agreement was only partially integrated, and reasoned that:

> Evidence that the parties agreed to reduce the sale price by the $2,000 down payment is not inconsistent with the actual terms of repayment included in the contract and the amortization schedule. The reduced price of $6,000 *does* contradict the written terms of a $6,500 sales price and a $500 down payment, but the result is the same: a contract price of $6,000 for a vehicle originally priced at $8,500.

*Id.* at 172.

Thus, while the court acknowledged that the terms of the agreement shown by parol evidence may have been facially contradictory, it determined that the obligations of the parties under that agreement were not inconsistent with the terms of the partially integrated sales agreement. *Id*. The court further noted that "[w]hen material extrinsic evidence shows that outside agreements were relied upon, those parol agreements should be given effect rather than allowing boilerplate 'to vitiate the manifest understanding of the parties.'" *Id*. at 173 (quoting *Lyall v. DeYoung*, 42 Wn. App. 252, 258, 711 P.2d 365 (1985)).

In this case, the Schleichers argue that a total transaction cost of $450,000 necessarily contradicts the $350,000 purchase price term stated in the REPSA. The REPSA defines the term "[p]urchase [p]rice" as follows: "Buyer shall pay to Seller the Purchase Price, including the Earnest Money, *in cash at Closing*, unless otherwise specified in this Agreement." Ex. 1 (emphasis added). By its terms, the purchase price as defined in the REPSA refers to the money that is due at the time that the transaction closes. *Id.* The parties closed the transaction in March 2012. The promissory note and mortgage obligated the Schleichers to pay Bena $100,000 in August 2016, over four years after the time of closing. Therefore, to the extent that the two agreements contemplated payments at specific temporal points, the obligation to pay $100,000 in 2016 under the mortgage and promissory note is not inconsistent with the obligation to pay $350,000 at closing in 2012. As such, we hold that the terms of the promissory note and mortgage do not conflict with the terms contained in the partially integrated REPSA.

The Schleichers also contend that the additional $100,000 obligation represented by the promissory note and mortgage is contrary to the release, the note accompanying the release, and the excise tax affidavit used for closing. The Schleichers do not offer any elaboration or citation to specific sections of these documents to explain how they are contradictory. Furthermore, the parol evidence rule applies only to a writing intended by the parties as an integration of their agreement, that is, a writing intended as a final expression of the terms of the agreement. *Emrich*, 105 Wn.2d at 555-56. While the documents may be "writings between the parties," the Schleichers have not argued that the writings themselves were integrated, much less that the writings were part of the same integrated agreement as the REPSA, mortgage, and note. It is not the function of an appellate court to "comb the record with a view toward constructing

11

arguments for counsel." *In re Estate of Lint*, 135 Wn.2d 518, 532, 957 P.2d 755 (1998).

Therefore, we decline to consider this argument.

## II. RELEASE

The Schleichers argue that interpreting the release to be ineffective between the parties would contradict the language of the release. We disagree.

A release is a contract. *Nationwide Mut. Fire Ins. Co. v. Watson*, 120 Wn.2d 178, 187, 840 P.2d 851 (1992). As a contract, we consider parol evidence to determine whether a release is integrated and to clarify any ambiguity as to the parties' intent. *Emrich*, 105 Wn.2d at 555-56; *Vanderpool v. Grange Ins. Ass'n*, 110 Wn.2d 483, 488-89, 756 P.2d 111 (1988). For a release to be binding, the released party must also supply consideration. *Lilenquist Motors, Inc. v. Monk*, 64 Wn.2d 187, 189, 390 P.2d 1007 (1964). Performance of a preexisting legal obligation is not valid consideration. *Multicare Med. Ctr. v. Dep't of Soc. & Health Servs.*, 114 Wn.2d 572, 584-85, 790 P.2d 124 (1990), *overruled in part on other grounds by Neah Bay Chamber of Commerce v. Dep't of Fisheries*, 119 Wn.2d 464, 832 P.2d 1310 (1992).

Although the trial court in this case did not expressly state whether the release was integrated, its findings of fact indicate that it did not consider the written release as an expression of the final terms of the release agreement between the parties. The release of mortgage document states that "the mortgage[] dated 30 August, 2011 . . . together with the debt secured by said mortgage, has been fully paid, satisfied, released, and discharged." Ex. 6. However, the trial court found that "[t]here is no evidence presented that the amount represented by the note was, in fact, paid." CP at 28. "[A] party to a contract is not bound by a false recital of fact, and

12

parol evidence is admissible to show the true state of affairs." *Cook v. Vennigerholz*, 44 Wn.2d 612, 616-17, 269 P.2d 824 (1954). Insofar as the trial court determined that the release agreement contained false statements of fact regarding the parties' performance, it implicitly determined that the release agreement did not contain the final expression of the parties' agreement. Additionally, the release did not contain an integration clause, which further supports the conclusion that the release was not the complete agreement between the parties. *M.A. Mortenson Co. v. Timberline Software Corp.*, 140 Wn.2d 568, 580, 998 P.2d 305 (2000). As such, we find that the trial court implicitly determined the release agreement to be at best a partially integrated contract.

The Schleichers argue that the release cannot be interpreted as ineffective between the parties because such an interpretation is contrary to its terms. The Schleichers maintain that "[t]he fact that there was no payment at that time is not determinative of an intent not to release the obligation," and that obligations are commonly released as gifts or forbearance. Br. of Appellant at 16-17. While this assertion may be true, for a release to be binding on the releasing party, it must be supported by consideration. *Lilenquist Motors, Inc.*, 64 Wn.2d at 189. Although the Schleichers point out that even Bena believed that the release was valid, whether a contract is supported by consideration is a question of law for our court. *Nationwide*, 120 Wn.2d at 195. In this case, the trial court found that because the parties did not intend for the release to change their respective positions, the release had no effect on the promissory note and mortgage. We hold that because the release did not have any effect on the parties, it lacks any consideration by the Schleichers and is therefore unenforceable. *McKasson v. Johnson*, 178 Wn. App. 422,

428-29, 315 P.3d 1138 (2013), *remanded*, 2014 WL 12679686.

III. MERGER

The Schleichers argue that the provisions of the promissory note and mortgage are extinguished by merger into the deed because they contradict the terms of the REPSA and other documents. We disagree.

Generally, the provisions of a contract for the sale of real estate and all prior agreements merge into the deed made in the execution of the sale. *Black v. Evergreen Land Developers, Inc.*, 75 Wn.2d 241, 248, 450 P.2d 470 (1969). However, the rule is not absolute, and is subject to several exceptions, including the doctrine of partial integration. *Id*. at 248-49. Under the doctrine of partial integration, provisions not contained in the writing may be proved by parol evidence insofar as they are not inconsistent with the written provisions. *Id*. at 249. As discussed above, we find that the terms of the promissory note and mortgage do not conflict with the terms of the REPSA. Because the terms do not conflict, the promissory note and mortgage do not merge into the deed at closing.

IV. STATUTE OF FRAUDS

The Schleichers argue that the statute of frauds bars the promise to reinstate the promissory note and mortgage. We disagree.

Generally, every conveyance of real estate or any interest therein must be by deed, and every deed must be in writing and signed by the party to be bound. RCW 64.04.010, .020. Similarly, any contract that by its terms is not to be performed within one year of its execution must be in writing and signed by the party to be bound. RCW 19.36.010. In this case, the

Schleichers' promise to pay Bena $100,000 after five years involves a conveyance of real estate and cannot be completed within a year, and therefore must be in writing. However, because we hold that the release between Bena and the Schleichers is unenforceable for lack of consideration, the original promissory note and mortgage still have legal effect and are in writing. Consequently, the writings that constitute the original promissory note and mortgage satisfy both the real estate and contracts statute of frauds.[2]

## V. ILLEGALITY

The Schleichers contend that the obligation to pay Bena the additional $100,000 is unenforceable on the grounds of illegality. We disagree.

If a contract is illegal, we will not enforce the contract between the parties. *Golberg v. Sanglier*, 96 Wn.2d 874, 879, 639 P.2d 1347 (1982). The same principle applies to contracts that grow immediately out of and are connected with an illegal act. *Id*. However, under the doctrine of severability:

> [I]f the promise sued upon is related to an illegal transaction, but is not illegal in and of itself, recovery should not be denied, notwithstanding the related illegal transaction, if the aid of the illegal transaction is not relied upon or required, or if the promise sued upon is remote from or collateral to the illegal transaction, or is supported by independent consideration.

*Brougham v. Swarva*, 34 Wn. App. 68, 80, 661 P.2d 138 (1983) (citing *Sherwood & Roberts-Yakima, Inc. v. Cohan*, 2 Wn. App. 703, 710, 469 P.2d 574 (1970)). Furthermore, our Supreme Court has reasoned that if "a party can show a right of recovery without relying on the illegal

---

[2] Because we hold that the release was not binding and the original promissory note and mortgage satisfy the requirements of the real estate and contracts statute of frauds, we do not address the parties' arguments relating to promissory estoppel.

contract and without having the court sanction the same he may recover in any appropriate action." *Melton v. United Retail Merchs. of Spokane*, 24 Wn.2d 145, 162, 163 P.2d 619 (1945).

A.     Mortgage Fraud

The Schleichers argue that the promissory note and mortgage are illegal and therefore unenforceable because they are complicit in the Schleichers' mortgage fraud. We disagree.

Former RCW 19.144.080 (2010) makes it unlawful to misrepresent, omit, or otherwise materially mislead a lender. In this case, the $100,000 promissory note and mortgage were related to Schleichers' alleged mortgage fraud only to the extent that they needed the promissory note and mortgage to "go away" in order to obtain financing after they failed to disclose the promissory note and mortgage. CP at 28. The agreement itself was not otherwise illegal and is independent of the mortgage fraud insofar as the promissory note and mortgage represented an obligation to be paid by funds other than those secured by the Schleichers' financing. Thus, the $100,000 promissory note and mortgage do not rely on the illegal act of the Schleichers, and, under the doctrine of severability, are not void as illegal.

B.     Real Estate Excise Tax

The Schleichers also argue that the promissory note and mortgage are illegal because Bena has not paid the full tax on the purchase price of the transaction. We disagree.

Former RCW 82.45.060 (2011) imposes "an excise tax upon each sale of real property at the rate of one and twenty-eight one-hundredths percent of the selling price." The pertinent statute defines "selling price" as "the true and fair value of the property conveyed." RCW 82.45.030(1). As applied to real estate assessments, our Supreme Court has defined "'true and fair value in money'" for taxation purposes as "'fair market value.'" *Twin Lakes Golf & Country Club v. King County*, 87 Wn.2d 1, 4, 548 P.2d 538 (1976) (quoting *Bitney v. Morgan*, 84 Wn.2d

16

9, 14, 523 P.2d 929 (1974)). "'Market value'" has been defined as "'the amount of money which a purchaser willing, but not obliged, to buy would pay an owner willing, but not obligated, to sell, taking into consideration all uses to which the property is adapted and might in reason be applied.'" *Id.* (quoting *Mason County Overtaxed, Inc. v. Mason County*, 62 Wn.2d 677, 683-84, 384 P.2d 352 (1963)). RCW 84.40.0301 establishes a rebuttable presumption that a property valuation for taxation purposes by a public official charged with the duty of establishing such a value is correct.

The Schleichers maintain that because the real estate excise tax affidavit listed the taxable selling price as $350,000, Bena has failed to pay the excise tax on the total price of $450,000 and consequently the transaction is illegal. Even if we assume the excise tax payment was inadequate, the governing statute does not make the transaction itself illegal, but rather imposes additional interest and penalties, which operate as a lien on the property. RCW 82.45.070, .100. The Schleichers offer no authority that a tax delinquency somehow makes the underlying transaction illegal.

Moreover, even if the transaction were illegal, we have previously reasoned:

> Courts will not allow themselves to be used for the purpose of conferring benefits upon litigants who plead the illegality of a contract into which they entered, when there has been a part performance of the contract, and when the relative positions of the contracting parties have been changed.

*Parker v. Tumwater Family Practice Clinic*, 118 Wn. App. 425, 434, 76 P.3d 764 (2003). In this case, Bena has completely performed his obligations by deeding the property to the Schleichers, and the Schleichers' claim that the promissory note and mortgage are illegal benefits only the Schleichers. With that, the Schleichers may not claim illegality as a basis for nonenforcement.

The Schleichers further claim that "[g]iven the language of the excise tax affidavit, the plaintiffs' action constitutes perjury." Br. of Appellant at 30. This assertion is limited to a single statement, cites no authority or sections of the record, and does not allege that Bena and Brae-Bedell made a statement that they knew to be false. RCW 9A.72.030. We generally do not consider conclusory arguments unsupported by citation to authority. *State v. Mason*, 170 Wn. App. 375, 384, 285 P.3d 154 (2012). Therefore, we decline to reach this issue.

For these reasons, the promissory note and mortgage are not illegal due to any tax delinquency.

## VI. SUBSTANTIAL EVIDENCE

The Schleichers assert that several of the trial court's findings of fact lack substantial evidence. We disagree.

Where contract interpretation does not require consideration of extrinsic evidence, it presents only an issue of law. *Viking Bank*, 183 Wn. App. at 711. However, where contract interpretation requires inferences from extrinsic evidence, it presents questions of fact. *Id*. We review the trial court's factual determinations for substantial evidence in the record. *Dave Johnson Ins.*, *Inc*. *v. Wright*, 167 Wn. App. 758, 769, 275 P.3d 339 (2012). Substantial evidence is evidence sufficient to persuade a rational, fair-minded person that a premise is true. *Id*. at 778. Unchallenged findings of fact are verities on appeal. *Robel v. Roundup Corp.*, 148 Wn.2d 35, 42, 59 P.3d 611 (2002). Regardless of the labels attached to them, we review effective findings of fact as findings of fact and effective conclusions of law as conclusions of law. *Dave Johnson*, 167 Wn. App. at 778.

The Schleichers argue that the trial court's conclusion of law that the Schleichers' lender presumably relied on Bena's release of the Schleichers' mortgage is actually a finding of fact that lacks substantial evidence. Specifically, they challenge the trial courts conclusion of law 3.(a) that:

> The release executed by [Bena], vis-à-vis Hunter Financial, the [Schleichers'] lender, is valid since the lender presumably relied upon it to ensure that its loan to [the Schleichers] was secured by a first position lien on the subject property.

CP at 28-29.

Assuming that these assertions are findings, there is substantial evidence that the lender relied on the effect of the release, even though the existence of the promissory note and release were not disclosed to it. On February 3, 2012, Bena sent a letter to the Schleichers' lender, which stated, in part, "[East Half Mile Road] is not mortgaged or encumbered, nor has it ever been while in my possession." Ex. 8. Furthermore, Nathan referred to Bena's anticipated letter to the lender in an e-mail dated February 3, 2012, and requested that Bena include additional information in order to "facilitate satisfaction" of the transaction. Ex. 18. Therefore, substantial evidence supports the finding of fact that the lender relied on the effect of the release.

The Schleichers also contend that substantial evidence does not support the finding that the parties intended the lender to be in the first position and the promissory note and mortgage in second position. They challenge the following aspect of the trial court's conclusion of law 3.(c):

> The promissory note and mortgage, however, were released by [Bena] at [Nathan's] urging prior to closing so that [the Schleichers'] lender could secure a first position lien on the property; but as between the parties, they did not intend that the terms of the note had been satisfied. The parties simply intended that [Bena's] mortgage would not be in a position senior to that of the other secured lender, Hunter Financial.

19

CP at 30. At trial, Bena testified that "[the parties] did not print [the note and mortgage] because [they were] intended to be a second and we were waiting for closing." Verbatim Report of Proceedings (VRP) (Sept. 22, 2014) at 43. When asked to clarify what was meant by "intended to be a second," Bena responded that the parties intended that the promissory note and mortgage be "[s]igned after the mortgage that the Schleicher[]s were trying to gain." VRP (Sept. 22, 2014) at 43-44. The trial court expressly found Bena more credible than the Schleichers. Furthermore, the trial court found that "[Nathan] told [Bena] he could not get a mortgage with the promissory note and mortgage outstanding." CP at 26. The Schleichers have not contested this finding, consequently it is a verity on appeal. *Robel*, 148 Wn.2d at 42. As such, substantial evidence supports the finding of fact that the parties intended the lender to be in the first position, with the mortgage and promissory note in the second position.

Additionally, the Schleichers assert that the trial court's finding of fact that they could only obtain financing if the lender was in the first position lacks substantial evidence. They dispute the following aspect of the trial court's conclusion of law 3.(a):

> Rather, the parties intended that the note and mortgage not stand in the way of [the Schleichers'] ability to obtain a loan to purchase the property. That financing would occur only if the Defendants' lender had a first position security interest in the property. That financing would occur only if the [Schleichers'] lender had a first position security interest in the property.

CP at 28. Bena testified that Nathan told him that he needed a release from the mortgage in order to obtain financing and that "[Nathan] couldn't get the loan that [he] want[ed] and [the lender] . . . wouldn't give [him] a loan if they had to do a second." VRP (Sept. 22, 2014) at 69. Bena further testified that "[Nathan] told me that if I would give him the satisfaction of the note

that we would re-sign it after closing, making it truly a second." *Id*. at 70. Furthermore, the trial court found that "[Nathan] told [Bena] he could not get a mortgage with the promissory note and mortgage outstanding." CP at 26. The Schleichers have not contested this finding of fact; consequently, it is a verity on appeal. *Robel*, 148 Wn.2d at 42. In light of the trial court finding Bena more credible than the Schleichers, there is sufficient evidence to persuade a rational fact finder that the Schleichers could only obtain a loan if its lender was in the first position.

## VII. ATTORNEY FEES

Bena argues in his cross appeal that he is entitled to attorney fees at trial and on appeal based on the fee provision contained in the promissory note and mortgage. We disagree.

Under RCW 4.84.330, a court shall award the prevailing party attorney fees and costs incurred to enforce the provisions of a contact or lease if the contract or lease specifically provides for attorney fees and costs. We review whether a contract entitles a party to recover any attorney fees de novo. *Ethridge v. Hwang*, 105 Wn. App. 447, 460, 20 P.3d 958 (2001). In this case, the mortgage securing the promissory note contains a fee provision that states:

> In case of failure to perform any of the foregoing covenants, or if default is made in the payment of said note, or any part thereof, when the same shall become due, then this mortgage may be at once foreclosed for the entire principal sum, accrued interest and costs, and in such foreclosure suit there shall be included in the judgment a reasonable sum as attorneys' fees.

Ex. 2. Similarly, the promissory note provides:

> In case suit . . . is commenced to collect this note or any portion thereof we promise to pay, in addition to the cost provided by statute, such sum as the court may adjudge reasonable as attorneys' fees therein, (including any action to enforce the judgment and this provision as to attorneys' fees and costs shall survive the judgment).

Ex. 3.

Bena cites to *Atlas Supply, Inc. v. Realm, Inc.*, for the proposition that attorney fees should be awarded, but that case is distinguishable. 170 Wn. App. 234, 287 P.3d 606 (2012). In *Atlas Supply*, Atlas sued Realm to recover the purchase price of construction and industrial supplies that the defendant refused to pay for after the products failed. *Id*. at 236. The agreement between the plaintiff and defendant contained a fee provision that stated:

> In the event [defendant] becomes delinquent in his account, [defendant] agrees that Atlas Supply, Inc. shall have the right to bring suit against the applicant and if this occurs applicant agrees to pay the costs of collection, including reasonable attorney fee in suit by Atlas Supply, Inc. or assigns for the merchandise sold to applicant on credit subsequent to the date hereof.

*Id*. at 237. The trial court granted summary judgment in favor of the plaintiff, but declined to award attorney fees incurred defending against several counterclaims. *Id*. at 236. Division One of our court reversed, reasoning that the plaintiff was entitled to "all fees and costs reasonably incurred to defend against . . . compulsory counterclaims because they were necessary for it to succeed on the collection of Realm's unpaid debt." *Id.* at 237, 240.

Despite the similar language in the attorney fee provision in *Atlas Supply*, this case is distinguishable because Bena is not seeking to collect on the note. Rather, Bena requested the trial court to "enforce [Nathan's] promise to reinstate the promissory note." CP at 78. By their terms, the promissory note and mortgage authorize attorney fees in the event that the Schleichers defaulted or otherwise forced Bena to litigate to collect on the note. The original promissory note and mortgage became due on August 30, 2016, five years after each was signed. Bena initiated his suit on September 14, 2014, well before he was entitled to collect on the promissory note and mortgage. Therefore, the litigation cannot be characterized as a suit to collect on the

22

note, and, consequently, Bena is not entitled to attorney fees under the fee provisions of the promissory note and mortgage. As such, we decline to award attorney fees to Bena on this basis.

CONCLUSION

We affirm the trial court's judgment.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____ Bjorgen, C.J.
BJORGEN, C.J.

We concur:

_____
JOHANSON, J.

_____
MELNICK, J.