[No. 32469. Department One. October 19, 1953.]

SANFORD BERNBAUM et al., *Respondents*, v. JAMES H. HODGES et al., *Appellants*.[1]

[1] Reported in 261 P. (2d) 968.

*Granville Egan,* for appellants.

*Preston, Thorgrimson & Horowitz,* for respondents.

WEAVER, J.—This is an action by a real-estate purchaser to recover damages from a seller-builder and the surety, upon a performance bond for breach of written guarantee provisions contained in a real-estate purchase contract.

Defendant Hodges Construction Company, a corporation, owned a parcel of real property in Seattle. It executed lease agreements, and agreed to construct a building on the property for the use and occupancy of two tenants.

Among other things, the leases provide:

"It is understood and agreed that the building to be erected upon the above-mentioned premises shall comply with all laws of the City of Seattle and State of Washington relative to fire protection, building erection and public health. That said building, as aforesaid, shall be erected in accordance with the plans and specifications attached hereto and marked Exhibit 'A'."

One of the leases contains a rider which provides that

" . . . it shall be the Lessor's [defendant's] responsibility to comply with the laws of the City of Seattle and the State of Washington in erecting the building to be leased to Lessee."

Attached to each lease, as exhibit "A," is a twenty-four by thirty-three inch drawing, prepared by a licensed architect. It contains a floor plan, with front and rear elevation drawings of the building to be erected. Although the leases refer to "specifications," it cannot be said that exhibit "A" contains complete building specifications, as that term is used in the building trade. Exhibit "A" is labeled, "This is not a working drawing." Although the plans are sufficient to identify and describe the proposed premises to a future tenant, there is testimony throughout the record that they were preliminary and were neither sufficient to meet the requirements of the city building code to secure a building permit nor sufficiently complete to proceed with construction of the proposed building.

October 27, 1949, before the building had been constructed, plaintiff contracted to purchase the property and the two leases from defendant for $47,500. Later, the plans for the building were altered to include a basement, and the additional space was leased to a third tenant. The "Earnest Money Receipt and Agreement" of October 27th was modified to include the third lease. The purchase price was raised to $55,000. Full payment was to be tendered on completion of the building.

The purchase agreement of October 27th, as amended, provided:

"1. A building and improvements shall be erected and placed upon the above described property in accordance with the terms, conditions and provisions of three leases, . . . Said building shall at the time of closing have been completed in good workmanlike manner and condition and shall then be in compliance with the laws of the State of Washington, ordinances of the City of Seatttle, and all directions, rules and regulations of the Health Officer, Fire Marshal, Building Inspector, or other proper officer of the City of Seattle. . . .

"3. That at the time of closing, there shall have been completed and installed, as if a part of the specifications, a concrete sidewalk on the 2nd Ave. side of the property . . . at the sole cost and expense of the seller.

"4. Seller and James Hodges, individually, who is contractor for the erection and completion of all improvements required under the terms of the aforesaid lease and this agreement, shall each guarantee the full and faithful performance of the building and improvement provisions contained in said lease, including the construction and erection of said building and improvements in accordance with the plans and specifications contained in said leases, and in accordance with the conditions of this earnest money receipt and agreement. . . . If any defect in the building and improvement appears within one year from date of completion, any such defect shall presumably be within the provisions of the guaranty in this agreement and upon the said seller and James Hodges being notified of any claimed defect shall promptly remedy the same if within the guarantees given. Furthermore, contractor shall keep building and improvements in good repair during said year whether or not contractor has breached his obligation hereunder."

Complete plans and specifications, consisting of seven large pages of architectural drawings (identified in the record either as plaintiff's exhibit No. 1 or as the plans and specifications of November 8, 1949), were later prepared by the same architect and filed with the Seattle building department. They were sufficient, and a building permit was issued.

May 1, 1950, the transaction was closed. The architect certified to plaintiff that the building

·" . . . has been completed in accordance with the plans and specifications prepared by this office and *dated November 8, 1949*." (Italics ours.)

The certification contained two minor exceptions, not material to this action. Plaintiff also received the personal written guarantee of Mr. Hodges, in the terms of the purchase-money agreement of October 27, 1949, and a surety company performance bond guaranteeing that Hodges Construction Company would replace any defects caused by defective workmanship and materials which might appear within one year.

During the following year, certain alleged defects appeared in the building. They fall into three categories: *First*, those arising from failure of the contractor to comply with the plans and specifications (the building could not be heated properly); *second*, those arising from failure of the contractor to carry out specific provisions of paragraph three of the earnest-money receipt (the sidewalk was not installed); *third*, those defects arising from failure to construct the building in a workmanlike manner (the walls leaked; an asphalt area at the rear of the building cracked and settled; the cement floor of the building was rough and uneven so that the floor tile cracked and broke).

Plaintiff notified defendant of these defects. Some attempt was made to remedy the situation, but, failing to satisfy plaintiff or the tenants, defendant refused to do anything further.

Plaintiff commenced this action. By trial amendment, Bernbaum Insurance Service, Inc., a corporation, was sub-

stituted as party plaintiff. Judgment was entered severally against defendants, James H. Hodges, individually, and Hodges Construction Company, a corporation, for $3,344.27, and against the surety for $3,221.50, said plaintiff to be entitled to but a single satisfaction not exceeding $3,344.27. Defendants appeal.

Appellants contend they were only bound by the preliminary plan which was attached to the leases. Respondent urges that its contractual rights were established by the complete plans and specifications of November 8, 1949, which were prepared for the actual construction of the building, and which were drawn in order to comply with the Seattle building code and needed to secure a building permit.

This portion of the controversy is directed primarily to the alleged claim that the premises could not be adequately heated. Exhibit "A" attached to the leases states:

"Heat—oil burning forced air space heaters."

The plans and specification of November 8, 1949, provide:

"Forced air oil burning furnaces complete with oil storage tanks—cold and warm air ducts and thermostatic and manual controls to furnish 70° heat to office area and 60° heat to toilets and service area when outside temperature is 20°."

■ The evidence amply supports the trial court's finding that the parties contracted for the erection of a building according to plans and specifications which would meet the requirements of the city building code. Appellant Hodges testified that he erected the building according to the plans of November 8, 1949, "in order to meet the City Code, which is called for in my contract." Not only are appellants responsible for noncompliance with the heating specifications required by the plans and specifications of November 8th, but the evidence shows that the heating equipment installed was insufficient to meet the common standard of heating required in that area. This constituted a defect in workmanship and materials, which appellants guaranteed to

remedy by the terms of the contract. The first two assignments of error are not well taken.

In fixing the damages awarded to respondent, the trial court determined from the evidence the cost of remedying the defects in the building, to make it conform to the specifications. This included the cost of overhauling the heating equipment, installing the sidewalk, waterproofing the walls, repairing the asphalt, and remedying the uneven floors.

Appellants urge that the court erred in using the "cost of repair" rule; that the court should have determined the damages to be the difference between the value of the building had it been completed according to the contract and the value of the building as actually constructed.

We have no quarrel with the rule announced by many of the authorities cited by appellants. In *Mahan v. Springer*, 155 Wash. 98, 99, 283 Pac. 667 (1930), this court said:

"We have held that, where there is a substantial compliance with the contract in cases of this kind, the measure of damages to the owner is what it would cost to remedy these defects, but that, where there is not a substantial compliance and where to remedy the defects it is necessary to tear down and rebuild large portions of the structure, the measure of damages is the difference between the value of the building as constructed and its value if it had been constructed in accordance with the contract."

See, also, *White v. Mitchell*, 123 Wash. 630, 213 Pac. 10 (1923); *Eckhardt v. Harder*, 160 Wash. 207, 294 Pac. 981 (1931); *Kenney v. Abraham*, 199 Wash. 167, 90 P. (2d) 713 (1939).

There are two reasons why the rule which appellants urge has no application to the facts of this case. First, there has been a substantial performance of the contract; the defects can be easily remedied. The building is being used by the tenants. It is not "necessary to tear down and rebuild large portions of the structure." Second, by the terms of the contract, the letter of guarantee, and the terms of the performance bond, the appellants are bound to remedy defects and keep the building in repair for one year.

The obligation is more than one just to construct the building.

Hence, since the contract has been substantially performed, the measure of damages is the cost of doing that which Hodges had the duty of doing but refused to do. The damages assessed were the direct, natural, and proximate result of the breach. The correct rule was used to measure the damages.

The judgment is affirmed.

GRADY, C. J., MALLERY, HILL, and OLSON, JJ., concur.

*J. W. Graham*, for respondents.

[1]Reported in 262 P. (2d) 179.