MARY MICHAEL LYALL, *Respondent,* v. ROGER A. DEYOUNG, ET AL, *Appellants.*

*Flynn, Adelstein, Sharpe & Serka* and *Linda R. Sullivan,* for appellants.

*Jeff T. Broihier,* for respondent.

GROSSE, J.—The principal issue in this case involves the effect to be given to an express warranty of water quality contained in a real estate earnest money agreement.

Roger and Arlene DeYoung (buyers) and Mary Lyall (seller) signed a real estate purchase and sale agreement (earnest money) for the sale of Lyall's 70–year–old house on 2.9 acres. The buyers viewed the property once before signing the earnest money and twice more before the transaction closed 6½ weeks later on July 7, 1981. The price was $58,000 with $30,000 paid at closing. Paragraph 5 of the earnest money is a warranty which states:

> 5. Utilities. Seller warrants that the property is connected to a: [ ] public water main [x] well [ ] public sewer main [x] septic tank [ ] None of the foregoing. (If well or septic tank are checked, the well or septic tank provisions on the reverse side hereof are part of this agreement.)

The express warranty, which is incorporated by paragraph 5, provides:

Seller warrants that: (1) The private well serving the property has always provided an adequate supply of household and yard water, meeting State Department of Social and Health Services purity standards; and (2) Continued use of the well is authorized by a State permit or other established and existing water right.

The seller also made oral representations that the water was adequate in quality and quantity for residential purposes.

Paragraph 3 of the conveyance contract signed at the July closing states:

The purchaser agrees that full inspection of said real estate has been made and that neither the seller nor his assigns shall be held to any covenant respecting the condition of any improvements thereon nor shall the purchaser or seller or the assigns of either be held to any covenant or agreement for alterations, improvements or repairs unless the covenant or agreement relied on is contained herein or is in writing and attached to and made a part of this contract.

After the buyers had taken possession and begun extensive remodeling, the house was without water for 2 weeks in August 1981. Upon inspection of the "well" they discovered that it was an open cistern 5½ feet within the road right of way and was fed by spring and surface water. The local health department inspected the cistern and found that it did not meet location, structural, or bacteriological standards for human consumption. Three attempts to drill for water on other parts of the property were fruitless culminating in advice from the driller that the property would not support a well.

The buyers stopped making payments in October 1981. The seller brought this action for specific enforcement in November 1981. The buyers counterclaimed for damages including the amount necessary to procure potable water and such other relief as deemed just. The court found that the seller had no duty to disclose defects of which she was not aware and that the warranty provision on the back of the earnest money was not known to her, was not bargained

for, nor was it relied on in making the earnest money.[1] The trial court concluded that the July 7 contract should be enforced against the buyers, dismissed the counterclaim, and awarded attorney's fees to the seller under terms of the contract. The buyers appealed.

The buyers argue that finding of fact 13 is not supported by the evidence and that the warranty provision was part of the final contract. They contend the warranty was breached when the contract was executed. The seller counters that the finding is supported by substantial evidence and urges this court to find as a matter of law that the earnest money and its warranty provision merged into the contract and may not be enforced since they were neither referenced within nor attached to the contract.

Initially, the seller makes the procedural argument that the warranty issue is improperly before this court. Seller argues that we may not examine the issue because the trial court made no written findings or conclusions addressing the warranty issue which appellants may challenge and error may not be assigned to the oral opinion. Such an approach belies the appellate process. Where an oral opinion is consistent with and explains findings, it is proper to examine a trial court's written findings in light of its oral opinion to resolve questions of whether and how the trial judge resolved a material issue. *Goodman v. Darden, Doman & Stafford Assocs.*, 100 Wn.2d 476, 481–82, 670 P.2d 648 (1983); *Kinnear v. Graham*, 133 Wash. 132, 133, 233 P. 304 (1925); *Nelse Mortensen & Co. v. Group Health Coop.*, 17 Wn. App. 703, 720, 566 P.2d 560 (1977), *aff'd*, 90 Wn.2d 843, 586 P.2d 469 (1978). It has long been the rule of

---

[1]Finding of fact 13 reads in full:

"There are form recitations contained on [sic] the Earnest Money Agreement signed by the parties which set forth a proported [sic] warranty on the water supply by plaintiff to defendants. Plaintiff was not aware that such recitation was contained in the Earnest Money. The said representation was not discussed or bargained for by the parties hereto. There was no evidence presented that defendants were aware of or relied in any way upon such recitation in the Earnest Money Agreement."

this jurisdiction that

> [t]he purpose of findings is to enable this court to review the questions upon appeal, and when it clearly appears what questions were decided by the trial court, and the manner in which they were decided, we think that the requirements have been fully met.

*Kinnear,* at 133. Thus the Supreme Court held that it was "our *duty* . . . to consider the findings in the light of the court's oral decision" where the written findings were not conclusive on the issue of an oral agreement amending a contract. (Italics ours.) *Kinnear,* at 133. The Court of Appeals applied this rule in *Nelse Mortensen* to ascertain how the trial court interpreted the contract at issue there. *Kinnear* and *Nelse Mortensen* control the instant matter. The central issue here is the application and effect of the express warranty contained in the earnest money and there are no written findings or conclusions to indicate how the trial court ruled on that issue.

The court discussed the warranty in its oral opinion stating:

> I don't think the parties ever discussed that, I don't think they even knew it was back there, so I don't really feel that became part of their contract.

This statement explains and amplifies finding of fact 13. Taken together these show the trial court's conclusion was that the express warranty was not part of the agreement at any stage because it was unbargained for boilerplate of which the seller was unaware. This was error for two reasons.

██ First, a voluntary signator to a contract cannot resist application of its terms simply by stating ignorance of its contents. In the absence of fraud the signator is deemed to have had ample opportunity to study the contract and its provisions including recitations which are properly referenced on the back side of the instrument. *H.D. Fowler Co. v. Warren,* 17 Wn. App. 178, 180–81, 562 P.2d 646 (1977) (attorney fee provision on back of contract enforced where properly incorporated on front, despite signator's claimed

ignorance of its existence). *See also Bernbaum v. Hodges,* 43 Wn.2d 503, 261 P.2d 968 (1953) (written guaranties in earnest money agreement enforced, finding defendant's knowledge or ignorance of the provisions irrelevant to whether they were part of the agreement).

Second, the trial court confused the application of the bargained for requirement. Normally the bargained for requirement is applied to avoid giving effect to a seller's disclaimer of express or implied warranties where that disclaimer is in a contract prepared by the seller and contained in fine print or boilerplate.[2] The seller has the burden of demonstrating that such a disclaimer was known to the buyer and bargained for before it will be considered valid and given effect. *See, e.g.,* RCW 62A.2–316; *Berg v. Stromme,* 79 Wn.2d 184, 484 P.2d 380 (1971) (refusing to give force to a warranty disclaimer clause in the sale of an automobile); *Dobias v. Western Farmers Ass'n,* 6 Wn. App. 194, 200, 491 P.2d 1346 (1971) (enforcing warranty as to seed against the manufacturer where it had not been properly disclaimed). It is not the law that one must bargain for each and every written term of a contract. *H.D. Fowler Co. v. Warren, supra; Bernbaum v. Hodges, supra.*

The seller also argues the earnest money and its warranties merged into the final contract eliminating all terms of the former, citing *Black v. Evergreen Land Developers, Inc.,* 75 Wn.2d 241, 450 P.2d 470 (1969). *Black* actually stands for the proposition that a boilerplate clause stating that the contract is not modified or affected by other verbal or written agreements of the parties is subject to parol evidence and will not be given effect where it

---

[2]Although not raised by the parties, we note that both the earnest money agreement and the final contract are the seller's and are the standard form agreements used for most residential real estate transactions. We further note that the earnest money was filled out by seller's real estate agent prior to her signing it. In the absence of fraud, she is bound by the acts of her agent acting within the scope of the agency since the agency relationship imputes her with knowledge of the agent's acts. *Chase v. Beard,* 55 Wn.2d 58, 63–64, 346 P.2d 315 (1959); *Equico Lessors, Inc. v. Tow,* 34 Wn. App. 333, 338–39, 661 P.2d 597 (1983).

appears that the provision was factually false. The court in *Black* found material parol evidence which showed that outside agreements were relied upon. It held those parol agreements should be given effect rather than permit boilerplate to vitiate the manifest understanding of the parties. Such a use of the boilerplate would otherwise amount to constructive fraud. *Black,* at 250–51. Mrs. DeYoung testified that she was aware of the well provision in the earnest money, and that she and Mr. DeYoung relied on the oral statements about the quality and quantity of the water.[3] Applied to this case, *Black* brings in the earnest money warranty and the oral representations as to the water as part of the final agreement of the parties.

Once it is determined the warranty was part of the agreement the buyers must show it was breached. The overwhelming and undisputed evidence supports such a finding. The testimony of both experts was unequivocal. The water could not meet applicable state standards at the time of the sale. This was not disputed by respondent.

The courts have consistently provided relief for buyers of property where the seller or their agent misrepresented the property or its water thereby inducing the sale, whether based on written or oral representations. It is immaterial whether these representations were intentional or were innocently made in good faith. *See Gronlund v. Andersson,* 38 Wn.2d 60, 227 P.2d 741 (1951) (false oral representations by the realtor as to the adequacy of the water supply, though made in good faith, amounted to fraud permitting rescission); *Vinneau v. Goede,* 50 Wn.2d 39, 309 P.2d 376 (1957) (affirming award of damages for misrepresentations as to well on land sold for residential use); *Alexander Myers & Co. v. Hopke,* 88 Wn.2d 449, 454, 565 P.2d 80 (1977) (misrepresentation was fraudulent where the earnest money stated the sale covered 70 acres "more or less" and the actual land sold was 50.99 acres);

---

[3]This evidence demonstrates that the last sentence of finding of fact 13 is clearly erroneous permitting us to disregard that factual determination.

and *Tennant v. Lawton,* 26 Wn. App. 701, 615 P.2d 1305 (1980) (realtor liable for good faith representation that the property would be amenable to the issuance of a septic tank permit when it in fact was not, reducing the value of the land by two–thirds). We are compelled to do the same here where the misrepresentations also amount to breach of express warranty, which warranty was a material inducement to the sale.

The buyers requested damages in the amount necessary to procure potable water, "cure," or the difference in the value of the property as warranted and as it actually was, the benefit of the bargain. The record is not sufficient for us to determine the proper measure of damages. We therefore remand for a hearing on that issue.

On remand the trial court should be guided by the principles of damages for breach of warranty for a contract for sale. The buyers are entitled to their benefit of the bargain: the difference in the market value of the property as warranted on the date of sale and its actual value on that date with the defect, along with any consequential damages not inherent in the benefit of the bargain[4] should that measure fail to make the buyers whole. RCW 62A.2–714, –715. This is essentially the same measure of damages awarded where the quality of land sold was misrepresented and rescission was not prayed for. *See Tennant v. Lawton, supra* at 703–04, awarding the benefit of the bargain and consequential damages proximately caused by the misrepresentation.

Although the buyers put on evidence of the cost of curing the defect as a possible measure of damages,[5] the cases which permit damages based on cure (including extremely

---

[4]These might include expenses incurred "in pursuance of reasonable efforts to avoid or minimize the damaging effects of another's wrong", C. McCormick, *Damages* § 42, at 152 (1935), such as the buyers' attempt to drill for water to mitigate their damages flowing from the breach of warranty.

[5]This cost was estimated as greater than the purchase price for the property since it required connecting to a water system over a mile away by laying pipe for that distance.

expensive cures relative to the contract price) all involve performance contracts for construction rather than contracts for sale, and thus do not control here. *See Eastlake Constr. Co. v. Hess,* 102 Wn.2d 30, 39–49, 686 P.2d 465 (1984). In *Eastlake* the court made an exhaustive study of past cases and treatises on the issue of whether a measure of damages must be precluded because the cost of cure was economically wasteful or disproportionate to the value of the contract. The court adopted section 348 of the Restatement (Second) of Contracts (1981) which awards a plaintiff the cost of replacing defective items in a construction contract unless that cost is "'clearly disproportionate' to the value of the benefit conferred". *Eastlake,* at 49. While *Eastlake* does not control this case since we have a contract for the sale of real property before us, it continues and encourages the principle of awarding the least costly remedy whether that be cure or benefit of the bargain plus any proper consequentials. *See also* 5 A. Corbin, *Contracts* § 1090, at 496–97 (1964), to the effect that where the damages under cure and benefit of the bargain analyses are different, courts tend to award the lesser amount. Under this rationale, if the seller can establish on remand that the cost of a cure is less than the benefit of the bargain measure, the cost of cure would be the proper measure of damages.

Finally, as the real estate contract authorizes attorney's fees to the prevailing party, and such award must necessarily follow the judgment, we also reverse the trial court's award of fees to the seller. We award fees to the buyers for trial, for this appeal, and for the hearing on damages, all as determined by the court on remand.

COLEMAN, J., and HOPP, J. Pro Tem., concur.

Review denied by Supreme Court February 7, 1986.