**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | No. 82910-6-I |
| Respondent, | DIVISION ONE |
| v. | ORDER DENYING MOTION FOR RECONSIDERATION AND WITHDRAWING AND SUBSTITUTING OPINION |
| CODY TERRELL WADE, | |
| Appellant. | |

Appellant Cody Wade filed a motion for reconsideration of the opinion filed on August 2, 2023. The panel has determined that the motion for reconsideration should be denied but the opinion filed on August 2, 2023, withdrawn and a substitute opinion filed striking footnote 16.

Now, therefore, it is hereby

ORDERED that Appellant's motion for reconsideration is denied and the opinion filed on August 2, 2023, shall be withdrawn and a substitute opinion striking footnote 16 shall be filed.

FOR THE COURT:

_Cheung, J._

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>                     Respondent,<br><br>          v.<br><br>CODY TERRELL WADE,<br><br>                     Appellant. | No. 82910-6-I<br><br>DIVISION ONE<br><br>PUBLISHED OPINION |

CHUNG, J. — After a trial that commenced in March 2021, Cody Wade was convicted of first degree burglary, first degree robbery, and second degree assault. The court imposed an exceptional downward sentence plus a mandatory firearm enhancement for each crime. Wade argues the court violated his constitutional right to confrontation by allowing two witnesses to testify remotely using Zoom[1] videoconferencing. Wade also challenges the use of remote videoconferencing technology for jury selection pursuant to court orders authorizing its use to reduce risk of COVID-19 exposure. He claims this method of jury selection violated his right to a jury drawn from a fair cross section of the community because it excluded people based on their race and economic status, as well as his right to a fair trial. He also argues that sentencing him to three mandatory firearms enhancements based on a single firearm violates double

---

[1] Zoom is a cloud-based videoconferencing software platform.

jeopardy. Finding no error, we affirm.

FACTS

Kim Nguyen and her husband Le Tran arrived home from grocery shopping just as their grandson Loc Tran,[2] who lived with them, also arrived home from work. As Le and Loc carried the groceries into their house, two people approached them and asked for directions and money. Le explained which bus they should take but did not give them any money, and the two people left.

Loc carried a tank of water into the house and went to his bedroom, which was off the kitchen, leaving the door to his bedroom slightly ajar. Loc heard his grandmother, Nguyen, in the kitchen asking "who is there," then he heard her scream. Loc heard a sound "like glass was broken" and a gunshot, and through the gap in the doorway from his bedroom, he saw one person run past his door. A second person, whom Loc later tentatively identified as Wade, pointed a gun at Loc. Wade did not say anything to Loc, and the other person pulled Wade away.

Le, who was in the garden, heard his wife scream. He observed one person leaving the house, and saw another person in the hallway. He found Nguyen lying in a pool of blood in the kitchen and called 911. Nguyen's purse was taken, and she had been beaten over the head with a gun, pushed to the ground, stomped on, and shot. She spent five days at Harborview Medical Center but survived the attack.

---

[2] To avoid confusion, this opinion refers to Le and Loc Tran by their first names.

The State initially charged Wade with burglary in the first degree, assault in the first degree, and assault in the second degree, each while armed with a firearm, and later amended the charges to include robbery in the first degree with a firearm. Before Wade's trial, the State moved to allow Nguyen and Le to testify remotely using videoconferencing due to their vulnerability to COVID-19. Both were 77 years old and unvaccinated against COVID-19. Then-current Centers for Disease Control and Prevention (CDC) guidelines stated that people over the age of 65 were at "extreme risk" from COVID-19. Nguyen and Le were scheduled to receive their first dose of vaccine in a few days. The State had initially moved for a four-week continuance in order to allow the two to receive both their first and second vaccinations and then testify in person. Wade, however, would not agree to a continuance, as he had been in jail awaiting trial for approximately three years at that point. Following a hearing on the State's motion, the court decided Nguyen and Le could testify remotely and issued a six-page written order to that effect.

Wade's trial began in March 2021, when King County Superior Court had just reopened for in-person criminal jury trials pursuant to its Emergency Order # 27.[3] Wade objected to electronic or virtual jury selection on various grounds,

---

[3] Emergency Ord. # 27 re: Crim. Cases, No. 21-0-12050-3, Suspension of In-Person Criminal Jury Trials Through February 12, 2021 (King County Super. Ct., Wash. Jan. 22, 2021), https://kingcounty.gov/~/media/courts/superior-court/docs/COVID-19/FILED-Emergency-Order27-KCSC-210120503.ashx?la=en [https://perma.cc/X2JE-4YGV]. "This [Washington Supreme Court] Order and other applicable emergency orders may be deemed part of the record in affected cases for purposes of appeal without the need to file the orders in each case." Ord. re: Modification of Jury Trial Proc., In re Statewide Response by Washington State Courts to the COVID-19 Public Health Emergency, No. 25700-B-631, at 5 (Wash. June 18, 2020),

including that remote voir dire violated his constitutional right to a jury drawn from a fair cross section of the community. The trial court denied his motion.

The jury returned a guilty verdict on four counts.[4] The court sentenced Wade to an exceptional downward sentence of 41 months due to his youth and immaturity but imposed an additional 156 months for three mandatory firearms enhancements, each to be served consecutively. Wade filed this timely appeal.[5]

DISCUSSION

I.      Remote Witness Testimony and the Confrontation Clause

Wade argues the trial court erred by allowing Nguyen and Le to testify remotely during COVID-19, thus violating his constitutional right to confrontation. Specifically, he contends the State failed to present sufficient evidence to excuse face-to-face confrontation, the court erred by not holding a full evidentiary hearing with testimony under oath on the State's motion to allow remote testimony, and the court erred by not reexamining its order before Nguyen and Le testified remotely a month later. We disagree.

---

https://www.courts.wa.gov/content/publicUpload/Supreme%20Court%20Orders/Jury%20Resumption%20Order%20061820.pdf [https://perma.cc/S5YJ-BWPR].

[4] On the charge of assault of Nguyen, the jury convicted Wade of second degree, rather than first degree, assault. This charge merged with the burglary and robbery counts; Nguyen was the victim for all three counts.

[5] On the penultimate page of his brief, Wade alleges that because he refused to enter a plea, "[t]he State punished [him] for exercising his right to a jury trial" by charging him "in a manner that could have resulted in a sentence of 30 years." He further alleges that this type of charging results in "over-incarceration" and that "[RCW 9.94A].533(3) charges are the source of significant racial disparity in Washington sentences." Wade does not, however, further explain this claim or support it with legal argument. Thus, regardless of the veracity of these statements, "[t]his court will not consider claims insufficiently argued by the parties." State v. Elliott, 114 Wn.2d 6, 15, 785 P.2d 440 (1990).

The federal constitution guarantees a person accused of a crime the right "to be confronted with the witnesses against" them. U.S. CONST. amend. VI. The Washington Constitution similarly provides that an "accused shall have the right . . . to meet the witnesses against him face to face." WASH. CONST. art. I, § 22.[6] The right is a procedural guaranty of "face-to-face" cross-examination. Coy v. Iowa, 487 U.S. 1012, 1019, 108 S. Ct. 2798, 101 L. Ed. 2d 857 (1988) (confrontation right violated by a screen placed between testifying teenaged sexual assault victims and the defendant).

However, this right to face-to-face confrontation is only a "preference" that "must occasionally give way to considerations of public policy and the necessities of the case." Maryland v. Craig, 497 U.S. 836, 847-49, 110 S. Ct. 3157, 111 L. Ed. 2d 666 (1990) (internal quotation mark omitted), quoted in State v. Milko, 21 Wn. App. 2d 279, 287-88, 505 P.3d 1251, review denied, 199 Wn.2d 1024, 512 P.3d 890 (2022). "[A] defendant's right to confront accusatory witnesses may be satisfied absent a physical, face-to-face confrontation at trial only where denial of such confrontation is necessary to further an important public policy and only where the reliability of the testimony is otherwise assured." Craig, 497 U.S. at 850.[7] The Craig two-pronged test of necessity and reliability applies to two-way video testimony. Milko, 21 Wn. App. 2d at 289-90.

---

[6] Wade does not suggest the state constitution provides different or greater protection than the federal confrontation clause and provides no briefing for such an analysis under State v. Gunwall, 106 Wn.2d 54, 720 P.2d 808 (1986).

[7] We note that in Crawford v. Washington, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004), a case subsequent to Coy and Craig, the U.S. Supreme Court held that the inability to cross-examine a witness violated the Sixth Amendment. Crawford, 541 U.S. at 68 (prohibiting

5

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

In general, we review de novo alleged violations of the confrontation clause. Id. at 289. Necessity is a mixed question of law and fact. Id. We review the trial court's factual findings related to necessity for substantial evidence, and we review de novo the trial court's legal conclusion that video testimony was necessary. Id. at 289-90. Violations of a defendant's right to confrontation are subject to harmless error analysis. Coy, 487 U.S. at 1021; State v. Sweidan, 13 Wn. App. 2d 53, 56, 461 P.3d 378 (2020).

Wade does not dispute the court's identification of the relevant public policies: the court's role in the community, the court's interest in reducing case backlog, the defendant's desire to proceed to trial, and Nguyen and Le's health and safety. Instead, Wade challenges the court's legal conclusion of necessity.[8]

Necessity is case specific, Craig, 497 U.S. at 855, and "means something more than 'convenient,' although something less than 'absolute physical necessity.' " Sweidan, 13 Wn. App. 2d at 73. Here, substantial evidence supports the case-specific facts found by the trial court, including the ages of Nguyen and Le, their vaccination statuses, and the medical information provided by their doctor's note. Yet Wade argues that "[i]t is not enough that a witness . . . *might* be exposed to the COVID-19 virus."

---

tape-recorded statements offered as evidence under a hearsay analysis). The U.S. Supreme Court has not addressed Coy or Craig since deciding Crawford. As we have previously stated, "Crawford did not explicitly overrule Craig." State v. D.K., 21 Wn. App. 2d 342, 348, 507 P.3d 859, review denied, 200 Wn.2d 1003, 516 P.3d 376 (2022). Thus, as in D.K., here, "because Craig refers to live, remote, video testimony, we apply the rule in Craig." Id.

[8] Wade makes another argument, raised for the first time in his reply brief, that the court should have "reexamined" its order because by the time Nguyen and Le actually testified the two were likely fully vaccinated. We do not address matters raised for the first time in reply briefs. RAP 10.3(c); Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

6

Division Two of this court specifically rejected that argument in <u>Milko</u>. In <u>Milko</u>, the court affirmed the use of two-way video conferencing for two out-of-state witnesses due to the risks posed by COVID-19, reasoning that the risk of contracting COVID-19, as opposed to actually suffering from the virus, "was sufficient to establish necessity." 21 Wn. App. 2d at 294. We agree with this reasoning. Like the witnesses in <u>Milko</u>, Nguyen and Le demonstrated a higher risk of contracting COVID-19—here, due to their age.

Wade also argues a court "cannot simply rely on a general, unsworn letter from a doctor who provides no underlying information on his patients." But the doctor's note here provides information about the specific risks to Nguyen and Le. Other courts have relied on similar information about specific individuals' risks to determine the necessity prong for remote testimony. <u>See</u> <u>State v. D.K.</u>, 21 Wn. App. 2d 342, 345, 507 P.3d 859, <u>review denied,</u> 200 Wn.2d 1003, 516 P.3d 376 (2022) (relying on doctor's declarations that witnesses had medical conditions that rendered them immunocompromised and they were not yet eligible for the vaccine); <u>Milko</u>, 21 Wn. App. 2d at 284 (finding necessity based on witnesses' declarations and testimony about their medical conditions and risk from exposure to COVID-19 unsupported by doctors' notes). And sworn testimony, while encouraged, is not required. <u>See</u> <u>Sweidan</u>, 13 Wn. App. 2d at 78 (noting that neither physician nor witness signed the letters in support of witness's remote testimony and stating, "[W]e encourage trial courts to require affidavits or even testimony on the phone under oath" before ruling on necessity).

Thus, substantial evidence supports the court's findings of case-specific facts relating to the necessity of allowing Nguyen and Le to testify remotely through Zoom. We determine the court did not err in concluding their remote testimony was necessary to further undisputed, important public policies.

As to reliability, the court found that remote testimony by Nguyen and Le "will not reduce the reliability of their testimony" particularly because "jurors will have an up-close view of the witness . . . much more clearly than if . . . socially distanced several yards away." "Under Craig, reliability requires that video testimony of witnesses occur under oath, within view of the fact finders, and with opportunity for cross-examination." D.K., 21 Wn. App. 2d at 351 (citing Craig, 497 U.S. at 857). Here, the court did not err in concluding that the method of remote testimony over Zoom was reliable because Nguyen and Le's demeanor was on view while they testified and were cross-examined under oath.

Thus, Nguyen and Le's remote testimony met the two prongs of the Craig test: it was necessary to further the important public policy reasons of the health and safety of witnesses and the court's continued operations during COVID-19, and the procedure assured the testimony was reliable. We conclude that allowing Nguyen and Le to testify remotely did not violate Wade's right to confrontation.[9]

---

[9] Wade also challenges the trial court's failure to enter written findings of fact regarding its decision. However, the court's written order details the facts on which it relied, even if it did not use that label, so it is sufficient for our review. "The purpose of findings is to enable this court to review the questions upon appeal, and when it clearly appears what questions were decided by the trial court, and the manner in which they were decided, we think that the requirements have been fully met." Kinnear v. Graham, 133 Wash. 132, 133, 233 P. 304 (1925), cited in Lyall v. DeYoung, 42 Wn. App. 252, 255–56, 711 P.2d 356 (1985) (examining an express warranty despite the lack of written findings).

II.   Remote Jury Selection over Video

Wade next argues that, by permitting remote voir dire over Zoom during the COVID-19 pandemic, the trial court either abused its discretion or violated his constitutional right to a jury drawn from a fair cross section of the community. We disagree.

A.  Abuse of discretion

It is well settled that voir dire, of necessity, is left to a trial court's " 'sound discretion.' " State v. Davis, 141 Wn.2d 798, 825, 10 P.3d 977 (2000) (internal quotation marks omitted) (quoting Ristaino v. Ross, 424 U.S. 589, 594-95, 96 S. Ct. 1017, 47 L. Ed. 2d 258 (1976)). "[A]bsent an abuse of discretion and a showing that the rights of an accused have been substantially prejudiced, a trial court's ruling on the scope and content of voir dire will not be disturbed on appeal." Id. at 826. "Under an abuse of discretion standard, the reviewing court will find error only when the trial court's decision (1) adopts a view that no reasonable person would take and is thus 'manifestly unreasonable,' (2) rests on facts unsupported in the record and is thus based on 'untenable grounds,' or (3) was reached by applying the wrong legal standard and is thus made 'for untenable reasons.' " State v. Sisouvanh, 175 Wn.2d 607, 623, 290 P.3d 942 (2012) (internal quotation marks omitted) (quoting State v. Rohrich, 149 Wn.2d 647, 654, 71 P.3d 638 (2003)).

The process for jury selection is set out in Criminal Rule (CrR) 6.4(b). Additionally, King County Superior Court Local Criminal Rule (LCrR) 4.11 provides standards for, and a list of proceedings eligible for, video proceedings.

9

Jury selection is not one of the enumerated proceedings. See LCrR 4.11(a). Unenumerated proceedings "may be conducted by video conference only by agreement of the parties." LCrR 4.11(b).

Wade claims the trial court violated LCrR 4.11(b) because the parties did not agree to remote voir dire. The State argues the court properly exercised its discretion by following a local emergency order authorized by our Supreme Court. We agree with the State.

When Wade's trial began in March 2021, King County Superior Court had just reopened for in-person criminal jury trials pursuant to its Emergency Order # 27. That order states, "In-person criminal jury trials, with remote voir dire, shall resume on Tuesday, February 16, 2021." The authority for Emergency Order # 27 derived from the Washington State Supreme Court's "Fourth Revised and Extended Order Regarding Court Operations," issued in October 2020 (October 2020 Order),[10] which in turn relied on an earlier Supreme Court order regarding the modification of jury trial proceedings, issued in June 2020 (June 2020 Order).[11]

---

[10] Ord. re: Fourth Revised & Extended Ord. Regarding Ct. Operations, In re Statewide Response by Washington State Courts to the COVID-19 Public Health Emergency, No. 25700-B-646 (Wash. Oct. 13, 2020), https://www.courts.wa.gov/content/publicUpload/Supreme%20Court%20Orders/Extended%20and%20Revised%20Supreme%20Court%20Order%20October%202020.pdf [https://perma.cc/HN4J-9HFK].

[11] Ord. re: Modification of Jury Trial Proc., In re Statewide Response by Washington State Courts to the COVID-19 Public Health Emergency, No. 25700-B-631 (Wash. June 18, 2020), https://www.courts.wa.gov/content/publicUpload/Supreme%20Court%20Orders/Jury%20Resumption%20Order%20061820.pdf [https://perma.cc/S5YJ-BWPR]. The June 2020 Order was the Washington Supreme Court's first on the topic of the COVID-19 pandemic and remained its touchstone for subsequent orders during the COVID-19 state of emergency. The Court's

The June 2020 Order specifically states that, consistent with the constitutional rights of the parties, "[t]he use of remote technology in jury selection, including use of video for voir dire in criminal and civil trials, is encouraged to reduce the risk of coronavirus exposure." The June 2020 Order also authorized video proceedings under CrR 3.4 and expanded that rule to include jury selection. And the June 2020 Order also acknowledges, in its preamble, that "presiding judges . . . need direction and authority to effectively administer their courts in response to this state of emergency, including authority to adopt, modify, and suspend court rules."

Wade objected to electronic or virtual jury selection. He argued that remote voir dire violated his constitutional right to a jury drawn from a fair cross section of the community because the technical equipment required would be "yet another factor systemically excluding those already underrepresented in the process," including "low-income people and people of color." The trial court denied Wade's motion, stating, "[T]he Court will follow the policy that's been set by the Court leadership and conduct voir dire by Zoom." The court also said that video voir dire was "a controversy that is being dealt with at a level above my level." In a written order ruling on the parties' motions in limine, regarding remote voir dire, the trial court quoted Emergency Order # 27 and adopted and

---

subsequent COVID-19 orders kept in place many of its provisions, including the use of video for voir dire. See, e.g., Ord. re: Ct. Operations After October 31, 2022, In re Statewide Response by Washington State Courts to the COVID-19 Public Health Emergency, No. 25700-B-697, at 5 (Wash. Oct. 27, 2022), https://www.courts.wa.gov/content/publicUpload/Supreme%20Court%20Orders/Order%2025700A697.pdf [https://perma.cc/HXR3-V2WG].

11

incorporated a discussion of issues relating to remote jury selection from a written order in an unrelated King County Superior Court case, State v. Wilson, No. 18-1-04727-3-SEA (July 8, 2020) (Wilson order).[12]

The trial court properly relied on the Supreme Court's October 2020 and June 2020 Orders and King County Superior Court Emergency Order # 27 when it decided to allow Wade's jury to be selected over Zoom. It did not violate LCrR 4.11(b) because the Supreme Court's June 2020 Order recognized that courts would need to adopt, modify, or suspend rules such as LCrR 4.11(b) during COVID-19, and because "local rules may not be applied in a manner inconsistent with the civil rules" promulgated by the Supreme Court. Jones v. City of Seattle, 179 Wn.2d 322, 344, 314 P.3d 380 (2013).

Alternatively, Wade claims the trial court abused its discretion because it "made no independent decision" and "defer[red] to an order" from an unrelated case, Wilson, that did not discuss LCrR4.11(b). However, King County Superior Court designated Wilson to be the first case in that court to proceed to trial when jury trials restarted. The Wilson order cites the Supreme Court's June 2020 Order, which encouraged courts to use video for voir dire in criminal and civil jury trials. Further, the Wilson order acknowledges that "no part of a jury trial is more susceptible to the spread of a virus than jury selection" because 40-70 prospective jurors are "shoehorned" into the courtroom shoulder-to-shoulder, sharing a microphone that is "normally put right up against the speaker's mouth."

---

[12] The State moved to supplement the record with the order in Wilson. A commissioner of this court allowed the State to supplement the record with the Wilson order subject to Wade's arguments to the contrary in briefing. The Wilson order is included in the appellate record.

12

Then, the Wilson order presents the court's 33-point plan for conducting voir dire over Zoom.

Particularly relevant here, the Wilson order provides that Zoom's technical requirements are not imposed until after all of the following occur: prospective jurors are selected, those jurors are sent a questionnaire, those jurors answer the questionnaire, and hardships are considered and granted. If, at that point in the voir dire process, prospective jurors "express an inability or unwillingness to cooperate via Zoom," then those prospective jurors "will be summoned to the courthouse . . . for in-person voir dire." The Wilson order includes 18 pages of analysis regarding foreseeable legal issues: procedural due process, confrontation, a defendant's right to be present, substantive due process or the right to a jury trial, open court, the "Inequities in Zoom Technology," and other practical concerns. The court notes that "[t]he use of Zoom technology has already increased juror response rather than dampening it. No credible evidence exists that its use has increased disproportionality in this jury."

The Wilson order provides uniquely relevant reasoning by a judge in the same court facing the same national and state-declared state of emergency due to COVID-19. The trial court's reference to the Wilson order in this case is not a failure to exercise discretion or unlawful deference but, rather, a decision to adopt procedures pursuant to a clearly articulated written analysis of the facts and legal and practical issues related to voir dire common to all proceedings in the same court during COVID-19. Thus, the court here did not unreasonably defer to the Wilson order.

13

Finally, Wade argues that "the legislature has preempted the field of jury selection," so King County Superior Court's technical requirements for prospective remote jurors[13] violate state law regarding juries, chapter 2.36 RCW. But the concept of preemption is inapposite here, as Wade alleges a conflict between the authority of the legislature and that of the judicial branch, not a conflict between legislative entities.[14] Further, our Supreme Court has the inherent authority to administer justice and to ensure the safety of court personnel, litigants, and the public. State v. Wadsworth, 139 Wn.2d 724, 741, 991 P.2d 80 (2000); State v. Saintcalle, 178 Wn.2d 34, 111, 309 P.3d 326 (2013) (González, J., concurring) (this court has plenary authority over trial procedures), abrogated on other grounds by City of Seattle v. Erickson, 188 Wn.2d 721, 398 P.3d 1124 (2017). While the legislature established the qualifications for jurors, see RCW 2.36.070, chapter 2.36 RCW otherwise assigns to courts the authority to determine procedures for jury selection.[15]

---

[13] Wade describes the technical requirements to include that prospective jurors must have reliable access to high speed or broadband internet, a personal e-mail address, a device with a video camera, the ability to hear and be heard, and a quiet location without distraction. However, while Wade cites to the King County juror information page and to the report of proceedings for this information, the record on appeal does not include a copy of the documents used with Wade's juror panels.

[14] Wade points to Bass v. City of Edmonds, 199 Wn.2d 403, 508 P.3d 172 (2022), for support, arguing that it stands for the proposition that a state statute preempts a local rule if the statute occupies the field or if the statute and the local rule irreconcilably conflict. Bass does not support Wade's "preemption" argument in this case, as it involved a city firearms storage ordinance that was expressly preempted by state statute. Id. at 415.

[15] For example, the section of the statute entitled "Jury source list—Master jury list—Creation" states:

Unless otherwise specified by rule of the supreme court, the jury source list and master jury list for each county shall be created as provided by this section.

(1) *The superior court of each county* . . . shall annually notify the consolidated technology services agency . . . to use either a jury source list that

14

The trial court relied on Emergency Order # 27, and it adopted a written discussion of relevant legal issues shared in common with another case. King County's Emergency Order # 27 was authorized by the Supreme Court's modified jury trial order. Chapter 2.36 RCW delegates to the court decisions about jury selection and does not preempt Emergency Order # 27. Therefore, the trial court did not abuse its discretion when it denied Wade's motion in limine, incorporated the Wilson order, and allowed voir dire over Zoom.

B. The right to a jury drawn from a fair cross section of the community

Wade also argues that by permitting voir dire on Zoom over his objection, the trial court violated his constitutional right to a jury representing a fair cross section of the community. We conclude that Wade has not established a prima facie case of a violation of his right to a jury drawn from a fair cross section of the community.

Our federal and state constitutions guarantee criminal defendants the right to a jury trial. U.S. CONST. amends. VI, XIV; WASH. CONST. art. I, § 22 ("by an impartial jury of the county in which the offense is charged"). This right includes an impartial jury drawn from a fair cross section of the community. Taylor v. Louisiana, 419 U.S. 522, 527, 530, 95 S. Ct. 692, 42 L. Ed. 2d 690 (1975); see

---

is merged by the county or a jury source list that is merged by the consolidated technology services agency. . . .

RCW 2.36.054 (emphasis added). The next section provides, "*The superior court* at least annually shall cause a jury source list to be compiled from a list of all registered voters and a list of licensed drivers and identicard holders residing in the county." RCW 2.36.055 (emphasis added). And RCW 2.36.065 further assigns responsibility regarding jury selection, stating, "It shall be the duty of *the judges of the superior court* to ensure continued random selection of the master jury list and jury panels." (Emphasis added.)

15

also In re Pers. Restraint of Yates, 177 Wn.2d 1, 19, 296 P.3d 872 (2013) (the exclusion of distinctive groups prevents " 'the commonsense judgment of the community' " from operating " 'as a hedge against the overzealous or mistaken prosecutor' " and the " 'perhaps overconditioned or biased response of a judge' " (quoting Taylor, 419 U.S. at 530)). The venire, the pool, jury wheel, or panel from which a jury is drawn must not systematically exclude distinctive groups in the community. Duren v. Missouri, 439 U.S. 357, 363-64, 99 S. Ct. 664, 58 L. Ed. 2d 579 (1979) (quoting Taylor, 419 U.S. at 538).

A challenger has the burden to establish a prima facie violation of the right to a jury drawn from a fair cross section of the community. Yates, 177 Wn.2d at 19. A prima facie violation requires three elements:

> "(1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process."

Id. (quoting Duren, 439 U.S. at 364). If a violation is established, it is the State's burden to show a significant state interest, not merely rational grounds, manifestly and primarily advanced by the criteria resulting in the disproportionate exclusion of a distinctive group. Duren, 439 U.S. at 368, cited in Yates, 177 Wn.2d at 19. We review a trial court's rulings on challenges to the venire process for abuse of discretion. State v. Clark, 167 Wn. App. 667, 674, 274 P.3d 1058 (2012) (citing State v. Tingdale, 117 Wn.2d 595, 600, 817 P.2d 850 (1991)).

16

Wade argues that King County's juror selection system disproportionately excludes African-Americans and people with lower incomes. In support, he points to King County's online "Remote Participation – Video Voir Dire" page, which he states informs potential jurors they will need (1) reliable access to high speed or broadband Internet, (2) a personal e-mail address, (3) a device with a video camera, (4) the ability to hear and be heard, and (5) a quiet location without distraction. In addition, he quotes an open letter from the president of the Seattle King County NAACP expressing concern that remote voir dire is "a perfect example of the systemic racism in the criminal justice system." The State notes that both the postcard King County sends to potential jurors and its online pages for jurors provide a telephone number for potential jurors to call. Those pages also inform potential jurors they may appear in-person in small groups if remote voir dire is not possible. The record shows that potential jurors were sent questionnaires to which they replied, and then the court considered hardship dismissals.[16] Wade asked for the questionnaire to include a reminder to potential jurors not to search for the names of the parties, which the court granted. The record contains a transcript of the remote voir dire of three panels of jurors.

Here, Wade can establish that both African-Americans and people of low economic status comprise distinct groups for the purpose of this analysis. Yates,

---

[16] While the parties' briefing discusses King County Superior Court's "Remote Participation – Video Voir Dire" online pages and provides a website link, the appellate record does not contain the information from the website from the relevant time, nor the other referenced documents. Neither party requested that this court take judicial notice of this information. "The party presenting an issue for review has the burden of providing an adequate record to establish such error." Sisouvanh, 175 Wn.2d at 619 (citing RAP 9.2(b)).

177 Wn.2d at 19; RCW 2.36.080(3) ("A citizen shall not be excluded from jury service in this state on account of . . . economic status."). However, Wade fails to show that representation of these groups in the venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community. He presents no evidence establishing the proportion of African-Americans or the prevalence of low economic status either in King County or Wade's venire. He cannot show the absolute or comparative disparities required to analyze whether distinct community groups are fairly and reasonably proportionally represented within the venire. See Berghuis v. Smith, 559 U.S. 314, 323, 130 S. Ct. 1382, 176 L. Ed. 2d 249 (2010) (explaining the calculation of absolute and comparative disparities). Thus, Wade cannot satisfy the second element of his prima facie case, so his fair-cross-section-violation claim cannot proceed. See Duren, 439 U.S. at 364 (explaining the prima facie case for a fair-cross-section violation requires showing all three elements).

Nor can Wade establish the third element of his prima facie case. His concern is that remote voir dire systematically excludes people of color or of low income from serving as potential jurors, not from the venire from which potential jurors will be selected. But the record shows that potential jurors had already been selected from the jury pool, been summonsed by postcard, been questioned, and had hardship dismissals granted before the technical requirements of remote voir dire were introduced. The point in the process at which remote voir dire's technical requirements are introduced matters because the point of analysis for systemic exclusion is the venire. Taylor, 419 U.S. at 538

18

("Defendants are not entitled to a jury of any particular composition; but the jury wheels, pools of names, panels, or venires from which juries are drawn must not systematically exclude distinctive groups in the community and thereby fail to be reasonably representative thereof." (Citations omitted)); State v. Salinas, 87 Wn.2d 112, 115, 549 P.2d 712 (1976) ("The point at which to consider the constitutionality of the selection process has usually been at the selection of a master list from which the panel for each jury term is selected."). Therefore, the trial court did not abuse its discretion by rejecting Wade's challenge to remote voir dire over Zoom.[17]

### III.    Double Jeopardy

Wade also claims that imposing three firearms enhancements when he possessed only a single gun during a continuous criminal episode violated double jeopardy. Wade's primary argument is that each firearms enhancement pursuant to RCW 9.94A.533(3) is a separate punishment for the same underlying offense and, thus, violates double jeopardy. We disagree.

Our federal and state constitutions' "protection from double jeopardy protects against multiple convictions for the same offense and *multiple*

---

[17] For the first time on appeal, Wade argued he was prejudiced because his counsel could not accurately assess the nonverbal behaviors of prospective jurors over Zoom. Below, Wade moved to require witnesses, not jurors, to testify without wearing face masks. The court granted Wade's motion in part and required witnesses to wear plastic face shields, not cloth or paper masks, while testifying. Cf. State v. Bell, No. 83387-1-I (Wash. Ct. App. May 22, 2023), https://www.courts.wa.gov/opinions/pdf/833871%20orderandopinion.pdf (holding trial court did not abuse its discretion when, during a pandemic, it required jurors to wear face masks during jury selection but not clear face shields as requested by the defendant). Wade's motion in limine and argument objecting to remote voir dire discussed a fair-cross-section violation, not nonverbal behavior. We do not consider issues raised for the first time on appeal. RAP 2.5(a).

*punishments* for the *same offense*." State v. Arndt, 194 Wn.2d 784, 817, 453 P.3d 696 (2019) (citing Whalen v. United States, 445 U.S. 684, 688, 100 S. Ct. 1432, 63 L. Ed. 2d 715 (1980)).[18] However, the double jeopardy clause " 'does not prohibit the imposition of *separate punishments* for *different offenses*.' " Id. (quoting State v. Noltie, 116 Wn.2d 831, 848, 809 P.2d 190 (1991)). Thus, "the first step in determining whether a defendant has suffered multiple punishments for the same offense is to determine what punishments the legislature has authorized." Id. at 815. If the legislature clearly intended to impose multiple punishments for the same conduct, " 'this is the end of the inquiry and no double jeopardy violation exists.' " Id. at 816 (quoting State v. Kelley, 168 Wn.2d 72, 77, 226 P.3d 773 (2010)). Double jeopardy is a question of law reviewed de novo. Id. at 815.

Wade argues that statutory aggravators such as firearms enhancements are elements of the crime for double jeopardy purposes and, thus, the court could not impose multiple punishments for the same conduct, based on Alleyne v. United States, 570 U.S. 99, 103, 133 S. Ct. 2151, 186 L. Ed. 2d 314 (2013), and State v. Allen, 192 Wn.2d 526, 537, 431 P.3d 117 (2018). In Alleyne, the U.S. Supreme Court held that, other than a prior conviction, a fact that as a matter of law increases the penalty for a crime is an element of that crime and must be found beyond a reasonable doubt by the jury. Allen, 192 Wn.2d at 537 (citing Alleyne, 570 U.S. at 103). Subsequently, in Allen, the Washington

---

[18] Our state and federal constitutions "are identical" with regard to double jeopardy. State v. Schoel, 54 Wn.2d 388, 391, 341 P.2d 481 (1959).

Supreme Court applied Alleyne and concluded that statutory aggravators were an element of aggravated first degree murder for double jeopardy purposes. Id. at 544. Wade contends that firearms enhancements in a multiple punishments case "are no different from" aggravating factors in a multiple prosecutions case such as Allen.[19]

However, the Washington Supreme Court has subsequently explained that its "double jeopardy analysis in Allen does not apply to cases involving multiple punishments." Arndt, 194 Wn.2d at 818. The Arndt court distinguished the issue of multiple prosecutions, which looks to whether the same facts must be found by a jury under the Sixth Amendment, from the issue of multiple punishments under the Fifth Amendment, where the question is one of legislative intent. Id. at 815-17.

The court in Arndt relied on Kelley, 168 Wn.2d 72, a multiple punishments case involving firearms enhancements. In Kelley, the defendant committed murder and assault with a deadly weapon while armed with both a .45 caliber handgun and a 9-millimeter handgun and was sentenced to four firearms enhancements. Id. at 75. The Kelley court held the firearms enhancements did not violate double jeopardy, even though possession of a handgun was an element of one of his underlying convictions for assault with a deadly weapon. Id. at 84. In Arndt, the court ruled that "Kelley continues to apply and affirms the

---

[19] Allen involved multiple prosecutions: the State refiled charges of aggravated murder against Allen, who was alleged to be an accomplice in the shooting deaths of four police officers, after a jury acquitted him of the aggravating factors and his murder convictions were vacated on other grounds. Allen, 192 Wn.2d at 528-29.

principle that 'cumulative punishments may be imposed for the same act or conduct in the same proceeding if that is what the legislature intended.' " <u>Arndt</u>, 194 Wn.2d at 818 (quoting <u>Kelley</u>, 168 Wn.2d at 83).

Regarding legislative intent as to firearm enhancements, we have interpreted RCW 9.94A.533(3) to " 'clearly dictate[] . . . enhancements are mandatory and must be served.' " <u>State v. Wright</u>, 19 Wn. App. 2d 37, 47-50, 493 P.3d 1220 (2021) (quoting <u>State v. Brown</u>, 139 Wn.2d 20, 28, 983 P.2d 608 (1999), <u>overruled in part on other grounds by</u> <u>State v. Houston-Sconiers</u>, 188 Wn.2d 1, 21, 391 P.3d 409 (2017)), <u>review denied</u>, 199 Wn.2d 1001, 506 P.3d 1230 (2022).[20] Because RCW 9.94A.533(3) clearly expresses the legislature's intent for multiple punishments from the same conduct, " 'this is the end of the inquiry and no double jeopardy violation exists.' " <u>Arndt</u>, 194 Wn.2d at 816 (quoting <u>Kelley</u>, 168 Wn.2d at 77). The firearms enhancement statute is not a separate crime from the crime of conviction, and the legislature intended enhancements to be multiple punishments.

Finally, Wade argues the State is limited to a single enhancement for double jeopardy purposes because <u>State v. DeSantiago</u>, 149 Wn.2d 402, 68 P.3d 1065 (2003), holds the "unit of prosecution" for firearms enhancements is the number of firearms a defendant used or possessed. But the question in

---

[20] Wade argues that the statute is ambiguous because "no case has ever determined how many .533(3) charges can be added to multiple eligible offenses arising from one continuous episode when the defendant possesses only one gun." To the contrary, cases both before and after <u>Allen</u> have held that RCW 9.94A.533(3) is unambiguous. <u>E.g.</u>, <u>State v. Mandanas</u>, 168 Wn.2d 84, 90, 228 P.3d 13 (2010); <u>Wright</u>, 19 Wn. App. 2d at 47 (it is now "settled law" that the statute's enhancements are mandatory and must be served).

DeSantiago was whether the statute allowed more than one enhancement per conviction, and Wade asks a different question: whether three underlying convictions may each be enhanced a single time based on a single firearm. DeSantiago held that the "essential question" was not the unit of prosecution, but whether the legislature intended separate punishments. Id. at 420. In that case, the trial court imposed two enhancements, one for a handgun and another for a knife, based on one conviction for kidnapping. Id. at 410 (construing prior version of firearms enhancement statute). On appeal, DeSantiago argued that one underlying offense could not be enhanced twice. Id. The Supreme Court concluded the two enhancements did not violate double jeopardy because the statute's plain language required sentencing courts to impose an enhancement for each firearm or other deadly weapon. Id. at 421. DeSantiago does not support Wade's argument.

As discussed above, the firearms sentence enhancement statute, RCW 9.94A.533(3), is unambiguous and clearly expresses a legislative intent for multiple punishments. Wade was convicted of three separate crimes—burglary, robbery, and assault—and a separate firearm enhancement was imposed for each. Because these three firearms enhancements are multiple punishments for the three underlying convictions, they do not violate double jeopardy.

23

Affirmed.

Chung, J.

WE CONCUR:

Coburn, J.

Dwyer, J.

24